This is a child custody case. The mother appeals from a decree of the Circuit Court of Tallapoosa County, awarding custody of her son to his paternal aunt and her husband, Mr. and Mrs. Snow.
The mother, Terri Davis, and the father, Kenneth Moody, were married on January 6, 1977, when Mrs. Davis was sixteen years old. A son, Jason, was born to the parties on April 28, 1978. The parties separated several times during their marriage and frequently left Jason with his aunt, Anita Snow, during these separations. In September 1980 the parties entered into a separation agreement whereby the mother *Page 916 
was awarded custody of Jason. The couple had been heavy drug users during their marriage. In October 1980 Mrs. Davis, realizing the seriousness of her drug addiction, arranged with Mrs. Snow to keep Jason temporarily while she sought professional help. The mother went to the Chemical Dependency Unit in Baton Rouge, Louisiana for rehabilitation, and was released in November 1980. She stated that she has not used drugs since that time. She met George Davis at the drug center and later lived with him, after both were released from the center. The couple eventually married a few months prior to trial.
While in Mrs. Snow's custody Jason was diagnosed as having a hernia which required an operation. Mrs. Snow sought temporary custody of Jason in January 1981 in order to obtain medical treatment for Jason. Shortly after Mrs. Snow filed her petition for custody, Jason's mother arrived to take her son back with her. The mother testified that Mrs. Snow told her that she could not have the child and, therefore, she left without taking Jason. In February 1981 the mother again sought to regain custody of her child after a final decree of divorce was entered in Tallapoosa County, awarding custody to her. However, the sheriff refused to assist her because of the temporary custody order entered on Mrs. Snow's behalf in Marshall County. Eventually, the Circuit Court of Marshall County transferred the cause to the Circuit Court of Tallapoosa County. On June 14, 1982 default judgment was entered by the Tallapoosa Circuit Court, awarding custody of Jason to the father, with the stipulation that he reside with Mr. and Mrs. Snow. The mother then filed a petition to modify this decree, seeking to regain custody of Jason. The father filed his answer to the subject petition, requesting that the court continue custody of the child in him, or in the alternative, transfer custody to Mrs. Snow. The Snows filed a counterclaim asking that custody of the child be awarded to them. The court, however, struck their counterclaim because the Snows were not parties to the suit. On December 12, 1983 the court awarded the custody of Jason to Anita and Max Snow, nonparties to the subject action. The mother appealed to this court.
The mother contends on appeal that the trial court erred to reversal in awarding custody of Jason to his aunt and her husband, on the ground that they were not parties to the original divorce proceeding and she, therefore, had no notice of their claim for legal custody of the child. We disagree.
Mrs. Davis relies on our holding in Anonymous v. Anonymous,353 So.2d 510 (Ala.Civ.App. 1977), which was subsequently reversed by the supreme court in Anonymous v. Anonymous,353 So.2d 515 (Ala. 1977). In Anonymous the supreme court held that an award of custody of a minor child to nonparty paternal grandparents, without notice to the mother and opportunity to be heard, was a denial of due process. The court observed that the testimony at trial centered around the custody dispute between the mother and father, and that the mother was given no notice whatsoever that the grandparents' right to custody of the child was in issue. We find the holding announced inAnonymous not controlling on the facts of the case before us. As will be shown below, the mother had adequate notice that the Snows were asserting their right to legal custody of the child.
When the mother filed a petition to modify the decree of the Tallapoosa Circuit Court dated June 14, 1982, the Snows filed a counterclaim seeking to obtain legal custody of Jason. As mentioned above, this counterclaim was struck. Furthermore, the court indicated that a motion to intervene on the day of trial would be untimely. However, the trial court indicated that if it decided that it would be in the best interests of the child to be placed in the Snows' home it would do so, regardless whether the counterclaim was permitted or not. The following conversation is found in the record:
 "THE COURT: I agree. The parties who are not before the Court cannot file a counterclaim. *Page 917 
"MR. JONES: Well, —
 "THE COURT: And what you have filed here is clearly styled `Counterclaim.' And then it starts, `Now, come now Anita Snow and Max Snow . . .'
 "MR. JONES: All right. The alternative relief which has been prayed for by the original Defendant then would cover the issue anyway.
 "THE COURT: Well, as I — as I say, I've understood all along.
"MR. JONES: Well, we just wanted to be sure that —
 "THE COURT: And I'm not dealing — I don't — I don't intend to just exclude the interest that the Snows have shown in this matter all the way through. In fact, if I remember correctly when the matter first came up, I insisted that they be notified and — and —
"MR. GAVIN: And I did that, Your Honor.
 "THE COURT: — and that they have the opportunity to be here in whatever capacities that they wished to be here."
The above statements made in court were clearly sufficient to put the mother on notice that the aunt's claim to legal custody of the child was in issue. Moreover, Mr. and Mrs. Snow testified at trial that they wished to keep Jason in their home. Several reports from the Department of Pensions and Security were admitted into evidence without objection. These reports recommended that Jason remain in Mrs. Snow's home. Given the above, Mrs. Davis cannot now assert that she had no notice of the Snows' interest in Jason's custody, particularly in view of the father's answer, which prayed in the alternative that custody be awarded to the Snows. In fact, at trial, opposing counsel made it clear that the father was no longer asserting his right to legal custody since he had recently been arrested. The Snows, and not the father, testified at trial, and a close review of the record indicates that the custody dispute was actually between the mother and Anita Snow. Therefore, we conclude that the mother had adequate notice of the Snows' claim for legal custody of the child and an adequate opportunity to be heard on this issue. We determine that the trial court did not err in awarding legal custody to the Snows, who were not parties to this action.
The mother next contends that the trial court committed reversible error in awarding the custody of her son to his aunt, and asserts as a ground for her contention that a natural parent has a prima facie right to the custody of his child as against a nonparent's custody. Ex parte Sullivan, 407 So.2d 559
(Ala. 1981); Lewis v. Douglass, 440 So.2d 1073 (Ala.Civ.App. 1983). However, this presumption does not apply where a prior decree has awarded custody to nonparents and removed it from the natural parent. Ex parte Mathews, 428 So.2d 58 (Ala. 1983);Ex parte Berryhill, 410 So.2d 416 (Ala. 1982).
The Tallapoosa Circuit Court's prior decree dated June 14, 1982 awarded custody to the father with the stipulation that he reside with the Snows. Upon considering the mother's petition to modify this decree, the circuit court awarded custody to the Snows. In this situation, where the mother seeks to regain custody of a minor child who by prior decree has been placed, even temporarily, with another, she has the burden of proving that a modification of the custody decree is necessary to promote the child's best interests. Chandler v. Manning,411 So.2d 160 (Ala.Civ.App. 1982). In the case at bar the superior right of the mother to custody of her son was overcome by the prior decree awarding custody to Mr. and Mrs. Snow.
After examining the record carefully, we conclude that the mother and the Snows were capable of taking care of the child. The mother appears to have reformed her lifestyle and no longer uses drugs. However, our cases have held that evidence that one's lifestyle has improved is not sufficient to warrant a change of custody. Abel v. Hadder, 404 So.2d 64 (Ala.Civ.App. 1981). The mother must show not only that she is fit to have custody but also that a custody change would "`materially [promote]' the child's best interest *Page 918 
and welfare." Ex parte McLendon, 455 So.2d 863 (Ala. 1984).
As stated by our court, "The positive good brought about by the modification must more than offset the inherently disruptive effect caused by uprooting the child. Frequent disruptions are to be condemned." Wood v. Wood, 333 So.2d 826
(Ala.Civ.App. 1976).
The Snows have taken care of Jason during a very traumatic period in his life. They have comforted him while he was very sick. We realize that there were extenuating circumstances preventing the mother from visiting her son during this period; however, the Snow family has provided much care and support for Jason during his three year stay with them. The Snows have raised Jason in a good environment and have provided Jason with a large degree of permanence and stability. Jason has apparently adjusted very well to the Snow family. Given the evidence introduced at trial, the mother did not show that her child's interests would be promoted by a custody change so as to justify uprooting the child. Therefore, the mother failed to meet the standard required to modify a custody decree. Accordingly, we find that the court's award of custody was not clearly erroneous, and we therefore affirm the judgment of the trial court awarding custody of the child to Mr. and Mrs. Snow.
Both parties' requests for attorneys' fees on appeal are denied.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.