This is an appeal from the juvenile court's denial of the natural parents', Mr. and Mrs. Moore's, petition for return of legal and physical custody of their minor child, Shane Moore, Jr. *Page 883 
On June 16, 1983 the Department of Pensions and Security (DPS), through its Montgomery County department, filed a petition with the juvenile court seeking temporary legal custody of the Moores' son, Shane, and requesting that the natural mother, Mrs. Moore, retain physical custody of Shane as long as she resides with Shane's maternal grandmother. A preadjudication removal order was issued by the juvenile court on June 17, 1983 placing legal custody of the child with DPS pending further order of the court. Later attempts by DPS to gain cooperation from the Moores in their care of Shane were unsuccessful.
On July 20, 1983 Shane's paternal grandparents, Mr. and Mrs. Luzak, requested that temporary legal custody of the child be placed with them. The juvenile court entered a consent decree on September 28, 1983 continuing legal custody of the child in DPS and placing physical custody of the child with the Luzaks. The Moores were permitted to visit Shane at the Luzaks' home. Two more consent decrees were entered by the trial court in 1984 continuing legal custody of the child with DPS and physical custody with the Luzaks. Each decree provided for liberal visitation rights by the Moores with Shane.
On February 28, 1985 the Moores filed a petition with the court requesting the return of legal and physical custody of their child. The court denied their petition. The Moores appeal from the trial court's order, contending that the court committed reversible error in failing to award them custody of their child.
The record reveals that Mrs. Moore has been married five times and has four children, Robert Ammons, Charlotte Wright, Shane Moore, Jr., and Shawn DeWayne Moore. She has had repeated contacts with DPS since 1971 when one of her former husbands brought a complaint of neglect against her regarding their son, Robert Ammons. A DPS report dated December 28, 1983 noted that the Moores had an unstable lifestyle, evidenced by their frequent moves and irregular income. The Moores were evicted from at least one residence and often lived with friends and relatives until asked to leave. Robert and Charlotte lived with their maternal grandmother, Mrs. Bass, at the time of the DPS report. Charlotte was placed with Mrs. Bass in February of 1983 because she was abused by Mr. Moore. Mrs. Moore divorced Mr. Moore in 1983 but they remarried in October 1984.
The Moores testified at the hearing on their petition to regain custody that they lived in a nice two-bedroom apartment and that they had resided there for five months. Mrs. Moore stated that she currently receives disability benefits in the amount of $325 a month. Mr. Moore testified that he has a parttime job at Chuck's Pool Service, earning $4.00 an hour.
The Moores contend that the testimony at the hearing provided overwhelming evidence that their home environment and income is stable and that they are therefore entitled to regain custody of their child, Shane.
We note that where, as here, the natural parents seek to regain custody of their minor child, who has by prior judicial decree been placed with another, the natural parents have the burden of proving that a change of custody will materially promote the welfare and best interests of the child. Ex parteMcClendon, 455 So.2d 863 (Ala. 1984); Wilger v. StateDepartment of Pensions Security, 433 So.2d 1182 (Ala.Civ.App. 1981). The strong presumption favoring the natural parents as custodian as against a nonparent does not apply where a prior decree has awarded custody to nonparents and removed it from the natural parents. Sasser v. Thompson, 457 So.2d 422
(Ala.Civ.App. 1984); Wilger v. State Department of Pensions Security, supra.
Although the Moores showed that they have somewhat improved their lifestyle and finances, such evidence is not sufficient to warrant a change of custody. Ex parte McClendon, supra;Davis v. Moody, 459 So.2d 914 (Ala.Civ.App. 1984). Moreover, the record reveals that the Moores' home environment may still not be a stable one. At present, the Moores reside with Mrs. Noe. Mrs. Noe has had her parental rights of her children terminated *Page 884 
and was pregnant at the time of the hearing. Mrs. Moore gave birth to a baby boy, Shawn DeWayne Moore, shortly before the hearing. Mrs. Moore admitted that if she and her husband were awarded custody of Shane they would have to move to a larger apartment. It is not clear that the Moores are able to provide their son with a stable environment. They have failed to cooperate with DPS in the past, and Mr. Moore has not sought counseling for his abusive behavior. The evidence introduced at trial failed to show that Shane's interests would be promoted by a custody change so as to justify removing him from the Luzaks' home. The Luzaks have had physical custody of Shane since September 1983. Despite frequent attempts by the court to arrange visitation between the Moores and their son, Shane, the Moores have failed to exercise their visitation rights regularly. Based on the record before us, we cannot say that the trial court plainly and palpably abused its discretion in not returning legal and physical custody of Shane to the Moores.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.