[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 291 
This is a child-custody-modification case. Roger Eugene Rich, the father, appeals from a judgment of the Jackson Circuit Court awarding custody of the parties' child to Christy Vandiver Rich, the mother.
The parties married in 1996. They had one child, a son, who was born in September 1991; paternity was not in dispute.
In January 1998, the father filed a complaint for divorce. At the father's request, the trial court entered an ex parte order awarding him pendente lite custody of the child. The mother filed an answer, a counterclaim for divorce, and a motion for pendente lite custody of the child. The mother alleged that the father had harassed, stalked, and threatened her and that she believed the father was a danger to the child based upon his "mental state." The mother also filed a petition for protection from abuse requesting that the trial court enter an ex parte order enjoining the father from harassing her; the trial court granted that petition. Also, after holding a hearing on the mother's motion for pendente lite custody, the trial court entered an order in March 1998 awarding the mother pendente lite custody of the child. In its March 1998 order, the trial court also awarded the father standard visitation, but it did so with the caveat that the father's visitation "shall be generally supervised by the father's mother."
In December 1998, the trial court entered a judgment divorcing the parties based upon the ground of incompatibility of temperament. The trial court reserved jurisdiction to consider the issues of property division and child custody and stated that "the parties shall continue under the terms and conditions of the temporary order . . . entered . . . [in] March 1998."
In March 1999, the trial court held a hearing as to the remaining issues in the case. On June 29, 1999, it entered a judgment stating, in part:
 "The Court has heard considerable testimony from numerous witnesses for each party herein and from the evidence finds that the Court has justifiable concern, based on past conduct of the parties, for their true fitness as custodial parents. The father . . . has an extended history of drug abuse, although he has no current involvement with the use of illegal drugs . . . and has had no positive drug test for quite some time. . . . The father also appears to suffer *Page 292 
from an undiagnosed seizure disorder, or `blackout' disorder, which could potentially be dangerous to his child.
 "The mother has a long history of petite mal seizures which are controlled to some extent by her medication, but from which she still suffers periodic episodes. From aught that appears, the child has learned to cope with the mother's periodic seizures, has not been harmed thereby, and has been trained to make an appropriate telephone call if his mother suffers a seizure when he is alone with her. The mother now lives in the Grant community with her mother and the child attended the DAR school system last year where he did well in school.
 "The father lives in the Long Hollow Community near his parents and remains in the former marital home which he has purchased. . . . The father has a close family circle which assists him with caring for the child when he is with the father, and the Court finds the father's family support group to be stable and reliable for this purpose. There is no indication that the father is actively attending church with the child at the present time.
 "The mother is not actively engaged in employment and draws an [Social Security Income] check due to her disability. . . . The evidence reflects that she has been active in the child's school work, and has been a room mother at his first grade class at DAR school.
 "Based on the evidence, the Court is not presently ready to make a permanent custody award to either parent, but does find that the child's current living arrangement with his mother and his school record dictate that the child spend the school year primarily with the mother. However, the Court finds that the father has been active in the child's life and that the child would benefit from extended visits with the father during the summer months.
"Accordingly, it is ORDERED and DECREED as follows:
 "1. That the temporary custody of the child . . . is awarded to the mother . . . for a period from one week prior to the start of the DAR school year for 1999/2000, until one week following the end of the school year at the end of the spring term, 2000. During this time, the father is awarded standard visitation privileges. . . .
 "2. That commencing one week following the completion of the school year for 1999/2000 at DAR School, the temporary custody of the child herein is, for the summer months, reposed with the father, and the mother shall have standard visitation privileges. . . .
". . . .
 "6. That this action is set for review on all matters relating to the welfare of the child of these parties on the 1st day of May 2000, at 9:00 o'clock, a.m., unless, by appropriate motion and order, such review is set prior to that time."
The trial court's June 1999 judgment also required the father to make child-support payments to the mother, except during the summer months, and divided the parties marital property.
An "informal" hearing was apparently held in May 2000; the record contains no transcript of the hearing. In September 2000, the father filed a "Motion for Testimony Ore Tenus" alleging that no final judgment had been issued as to the custody of the child, requesting that the trial court take additional testimony as to the welfare of the child, and urging the trial court to apply the best-interest-of-the-child standard and award him custody of the child. Thereafter, the trial court entered an order stating that its June 1999 *Page 293 
judgment was a "temporary custody order leaving open, in the opinion of the Court, a request for either party to submit additional testimony looking toward a final order of primary custody in one of the parties." (Emphasis in original.) After setting and resetting the father's motion for a hearing, a hearing on the motion was finally held in August 2001.
After the hearing on the father's motion, at which ore tenus evidence was received, the trial court entered a judgment on August 21, 2001, stating, in part:
 "This protracted proceeding was before the Court for the last time on 16 August 2001, on the motion of the [father] . . . to amend a previous order of the Court reposing temporary custody of the minor child herein in the mother. . . . The mother argues . . . that in addressing the [father's] pending motion that the [Ex parte] McLendon [, 455 So.2d 863 (Ala. 1984),] standard for review for a change of custody is appropriate. . . . The Court . . . has addressed this issue previously and determines, again, that the [mother] has, since the original [judgment], had temporary custody only of this child and that the proper standard for review is that of the child's best interest.
 "The evidence reflects that for a little over two years the child has resided with the mother in Grant, Alabama during the school year and has attended DAR Elementary School. The child has done well in school and is presently starting the fourth grade. The father has had visitation with the child for the entire summer vacation of the years 2000 and 2001 during which time the mother exercised periodic visitation during the summer. . . .
 "The Court conducted, in the presence of counsel, a lengthy in camera meeting with the child . . . who the Court found to be a very bright, pleasant, young man, very well mannered and who expressed a strong love for both parents. This child expressed satisfaction with his living arrangements in both homes but did express a fairly strong preference to live with his father and spend summers with his mother.
 "The mother's evidence reflects that she still suffers from periodic seizures but that, due to a change in her medication, her seizures are much less frequent now than in the past. . . . The mother has purchased a new home where she has lived with this child and her mother who works at the Witt Company. . . . The mother has remained active in the child's school and is listed as a teacher's helper at DAR Elementary school. . . .
 "The mother continues to draw [Social Security Income] disability . . . and, to her credit, states to the Court that the father of the child is a good father and expresses her understanding that there would be no reason for the child not to live with the father should the Court determine this to be in the child's best interest. She states to the Court that she merely wants what is best for her child. The Court finds the mother has conducted herself properly as the temporary custodial parent of this child since the original order of this Court dated June, 1999.
". . . .
 "The father has remarried and continues to reside in the Long Hollow Community at the original former marital home of these parties. He continues to work as a painter and maintenance person for the Jackson County Board of Education. . . . The father's mother continues to live a few doors down the street from the father and is present this date . . . to assert to the Court that *Page 294 
she is ready, willing and able to assist the father in caring for [the child] as he may need her to do. . . . The [father] has suffered no more `black outs' since that testified to in the previous hearing, is on no medication and regularly attends the Holiness Faith Tabernacle Church in Scottsboro. The father has been active in the little league program in Scottsboro for the past three seasons and has coached [the child] in that capacity. . . .
 ". . . The [father] asserts that the [mother] has been a good mother to the child and that the parties have reached a much higher level of cooperation with each other on behalf of the child since the last hearing of this Court for which the Court applauds both parties.
 "Based on the totality of the circumstances as presently presented to the Court and using the standard of what would be in the best interest of this child, it is the opinion of the Court that the father should be awarded temporary custody of this child for the school year 2001-2002. . . . The parties should note that the custody of this child remains as temporary custody only due to the fact this child has lived primarily with the mother for the past two years and has spent the past two summers with the father and to allow this Court to continue to use the less burdensome standard for custodial matters when this matter is reviewed at a future date as noted hereinbelow.
"Accordingly, it is ORDERED and DECREED as follows:
 "1. That commencing at 3:00 p.m. on Sunday August 19, 2001, the temporary custody of the child . . . is hereby reposed in the father, . . . pending further order of this Court. The mother shall not be presently required to pay a fixed amount of child support but should, to the extent she can and on the limited means that she has, assist the child financially.
 "2. It is further ORDERED that the mother . . . shall have standard visitation privileges.
 "3. IT is further ORDERED that this action is set for a review of the issue of custody of this minor child on the 13th day of May 2002 at 9:00 a.m. at which time the Court will attempt to make a final award of permanent custody of this child between these parties."
(Second emphasis added.)
After the entry of the August 2001 judgment, the mother filed a motion alleging that the trial court had erred by not applying the standard set forth in Ex parte McLendon, 455 So.2d 863
(Ala. 1984). The mother requested that the trial court vacate the August 2001 judgment or grant her a new trial. Thereafter, in December 2001, the court issued an order stating, in part:
 "The Court has thoroughly reviewed the argument of counsel . . . and finds that, while the mother's motion correctly states that the McLendon rule would be required to be met to change even a temporary custodial order where a non-custodial parent was seeking to regain custody, the testimony and evidence even under the stricter rule was met by the father petitioning for such relief.
 "Accordingly, the [mother's] motion is denied and this action is set for a final hearing on the issue of custody in this case as per previous order of this Court at which time the Court will conduct an additional in camera conference with the child of these parties and hear such additional evidence as may be appropriate in an effort to put some finality to the previously entered temporary orders of this Court."
(Emphasis added.)
In May 2002, the court held a hearing to review the case as to the issue of custody *Page 295 
of the child and conducted an in camera interview with the child. Neither party objected to the in camera interview, and the record contains no transcript of the interview. The parties agreed to submit the case to the trial court for a decision as to custody of the child based upon the evidence that had already been presented to the court in previous hearings and on its in camera interview of the child. However, before the trial court issued a judgment as to custody of the child, the mother filed a motion alleging, in part, that a few days after the May 2002 hearing, the father had been involved in an altercation at one of the child's baseball games and had been dismissed from coaching the child's team. She also alleged that in early June 2002 the father's current wife had filed a petition for protection from abuse in which the father's current wife alleged that the father had slapped her and beat her up and that this was not the first time that the father had behaved violently toward her.
The father filed a motion objecting to the mother's attempt to introduce "new evidence" in the case; the trial court denied the motion. The trial court held a hearing on the mother's motion and received documentary and ore tenus evidence regarding the incidents described in the mother's petition. That evidence included a copy of the petition for protection from abuse filed by the father's current wife and testimony from the father's wife; the father objected to the admission of his wife's petition for protection from abuse into evidence and to the court's allowing his wife to testify because, he claimed, the information in the petition and the substance of his wife's testimony was privileged information under Rule 504, Ala. R. Evid.
In July 2002, the trial court entered a judgment stating, in part:
 "This matter was submitted for final consideration by the Court on 13 May, 2002, on certain stipulated facts and an in camera interview with the child. . . . Following these events on 13 May, 2002, counsel for the [mother] gave notice of two incidents that had occurred while this matter was under submission which, in the opinion of counsel, were relevant to those matters under consideration by the Court. Thereafter, the court conducted an additional hearing at which time the [father's] present wife . . . testified and the Court accepted affidavits from counsel for each party from [an employee] of the Scottsboro Recreation Department, addressing the incident . . . during the little league ball game in Scottsboro. . . .
 "The [father's] present wife filed a petition for protection from abuse against the [father] relating to an incident alleged to have occurred on 8 June, 2002, which caused the [father's] present wife to leave home for a few days. This causes the Court considerable concern as to the stability of the [father's] household although the [father's] wife has now petitioned the Court and obtained a dismissal of the protection order granted in this matter on the grounds that the parties were reconciled. The Court has read and considered thoroughly both affidavits filed . . . by [the Scottsboro Recreation Department's employee] and finds that the father . . . while using poor judgment in his field presence, is not considered by the Court at fault, other than by accident, in the incident occurring as described in the affidavits and that there was no wrongful intent on the part of [the father] during this event.
 "The child continues to express love and affection for both parents equally and also continues to express a general preference to remain with the father. *Page 296 
Based upon the father's misconduct, notwithstanding his having been forgiven as it relates to his wife, the Court is not inclined to allow the child to remain in a home where domestic violence exists as found by the Court under the facts of this case. This is consistent with this Court's findings in other matters relating to the consequences of exposing children to domestic violence.
 "Accordingly, it is ORDERED that primary custody of this child . . . be and hereby is awarded to the mother."
The trial court awarded the father standard visitation and awarded the mother child support.
The father filed a postjudgment motion requesting that the trial court alter, amend, or vacate its judgment or, in the alternative, that it grant him a new trial. Among the grounds asserted by the father in his postjudgment motion was the following:
 "2. That the Court erred in changing temporary custody from the [father] and placing primary custody with the [mother] in that the Court failed to identify the standard that was applied by the Court in removing temporary custody from the [father] and failed to properly apply the McLendon standard to this case."
Although the father's postjudgment motion was denied by operation of law, one day after the expiration of the 90-day time limit to rule on a postjudgment motion filed pursuant to Rule 59.1, Ala. R. Civ. P., the trial court entered an order purporting to deny the father's postjudgment motion. In that order, the trial court made no mention of the McLendon standard or the father's argument that the trial court should have applied the McLendon
standard in transferring physical custody of the child to the mother. Instead, the trial court's postjudgment order stated, in its entirety, as follows:
 "This matter was last before the Court on 5 November, 2002 on the motion of [the father] requesting the Court to alter its previous order dated 29 July, 2002 which order reposed and transferred primary custody of the minor child . . . to the mother. By agreement of the parties, the matter was submitted upon the Court conducting an additional in camera interview with this child so as to allow additional input from [the child] to the Court regarding his wishes.
 "The Court conducted such an interview and again found, as before, that the child of these parties . . . is a very nice young man who has great affection for both parents. He did not express any negative feelings about living primarily with his mother but did indicate to the court that he would like to spend half the time with his father.
 "The Court does not feel, at the present time, that it would be in the child's best interest to actually live with his mother and father separately during equal periods but does feel that, based upon the child's request, the mother should, to the extent she reasonably can, extend to the father additional visitation from time to time beyond that awarded by the Court in its last order.
 "Accordingly, it is ORDERED that with the suggestion noted hereinabove regarding additional, reasonable visitation with the father, the motion of [the father] to alter or amend the [judgment] of this Court entered on 29 July, 2002 should be and hereby is denied."
The father filed a timely appeal.
On appeal, the father argues that the trial court's July 2002 judgment should be reversed because, he says, it was based on inadmissible evidence. He also argues *Page 297 
that the trial court's judgment is due to be reversed because the mother did not file a pleading alleging that a change in custody would materially promote the child's best interests and because, he says, the trial court failed to apply the McLendon standard. The father also contends that there was insufficient evidence to support a conclusion by the trial court that the change in custody would materially promote the child's best interests.
The father first contends that the trial court erred because it considered his wife's petition for protection from abuse and her testimony as to the contents of that petition. In the petition, the father's wife alleged that the father had
 "slapped me, pushed me, yelled and screamed and told me to leave, then wouldn't let me, messed my arm up, busted up pictures in the house throwed my clothes everywhere. . . . I am in fear of further abuse by the defendant because: This is a repeatable scene and I don't want to be married or live or anything with him ever again."
The wife's testimony did not expand upon those allegations.
The father objected to the admission into evidence of the petition for protection from abuse and to his wife's testimony on the ground that that evidence pertained to confidential communications made during the marriage and was therefore protected by the "husband-wife privilege" provided in Rule 504, Ala. R. Evid. He does not deny that the actions described by his wife occurred. In fact, as to both the statements that he made to his wife and the actions he took toward her, the father only affirmed that he would not have taken the actions had he known a third person would hear about them.[1]
The husband-wife privilege "`has for its object the security from apprehension of disclosure — a security in consequence of which confidences will be freely given and not withheld.'" Brownv. State, 588 So.2d 551, 556 (Ala.Crim.App. 1991) (quotingHandley v. State, 515 So.2d 121, 125 (Ala.Crim.App. 1987), quoting in turn 8 Wigmore, Evidence § 2337 (McNaughton rev. 1961)).
 "The confidential communication privilege between spouses applies to `knowledge acquired by one spouse's observation of an act of the other spouse in private if the circumstances indicate the actor-spouse did the act in the presence of the other spouse solely because of the confidence normally inspired by the marriage relation.'"
Brown, 588 So.2d at 556 (quoting Handley, 515 So.2d at 124-25, quoting in turn Charles W. Gamble, McElroy's AlabamaEvidence § 103.01(4) (3d ed. 1977)). The privilege does not protect acts that do not "seek the shelter of the intimacy of the marital relationship." Brown, 588 So.2d at 557; see also
Charles W. Gamble, McElroy's Alabama Evidence § 103.01(4)(b) (5th ed. 1996) ("Confidentiality turns upon the intent of the communicating or acting spouse as judged from objective facts." (Footnote omitted.)).
It is obvious to this court that physical abuse by one spouse of the other spouse is not an act or communication for which the abuser is entitled to, or should expect, "security from apprehension of disclosure," *Page 298 
or to which the law's protection of confidences between spouses should apply. Brown, 588 So.2d at 556. Physical abuse by one spouse of the other spouse is not an act that "seek[s] the shelter of the intimacy of the marital relationship" in the manner contemplated by the husband-wife privilege. Brown, 588 So.2d at 557; see also People v. Johnson, 284 Cal.Rptr. 579,233 Cal.App.3d 425 (1991) (statements made by a husband to his wife as he was beating her were not privileged because they were an abuse of the relationship on which the privilege was predicated); State v. Bryant, 56 Ohio App.3d 20, 564 N.E.2d 709
(1988) (husband's threats and abusive behavior toward his wife were not confidential communications and thus were not privileged); Sterling v. State, 814 S.W.2d 261, 262 (Tex.App. 1991) (husband's abusive treatment of his wife was not a confidential communication).
The trial court did not err when it concluded that the petition for protection from abuse filed by the father's wife and the wife's testimony as to the petition's contents were not privileged communications under Rule 504, Ala. R. Evid.
The father next argues that the trial court's judgment should be reversed because the mother failed to file a pleading that alleged that a change of custody would "materially promote the child's best interest." See Ex parte McLendon, 455 So.2d 863
(discussed infra). The father has cited no authority in support of this argument. Also, the trial court's August 2001 judgment provided that custody would be reviewed and that another custody decision would be entered after a hearing to be held in May 2002. Neither party sought appellate review of the August 2001 judgment, and both parties consented to the trial court's May 2002 custody review for purposes of deciding who would have permanent custody of their child. The father cannot complain on appeal that the trial court considered whether to modify custody after he consented to the submission of that issue to the trial court. See McKinley v. McKinley, 277 Ala. 471, 172 So.2d 35
(1965); see also Neal v. Neal, 856 So.2d 766, 784 (Ala. 2002) ("A party cannot win a reversal on an error that party has invited the trial court to commit.").
Further, after the trial court took the custody issue under advisement, the mother filed a motion for the trial court to take additional evidence based, in part, upon changed circumstances since the trial court's entry of the August 2001 judgment, i.e., allegations that the father had committed domestic violence after the May 2002 hearing. After taking that evidence into consideration, the trial court rendered its decision and awarded custody to the mother. Although the pleadings and motions before the trial court did not specifically allege that a change of custody would "materially promote the child's best interest," if the evidence shows that the best interest of the child would be materially promoted by changing its custody, the pleadings should be deemed amended to conform to such evidence. Cf. Capra v.Capra, 56 Ala.App. 90, 93, 319 So.2d 286, 289 (1975) (deeming the pleadings amended to include an allegation conforming to the evidence that a change of custody would be in the best interest of a child).
Next, the father argues that the trial court erred because, he says, it failed to apply the McLendon standard when making its custody award. In Ex parte McLendon, 455 So.2d 863, our Supreme Court recognized that where there has been a voluntary forfeiture of custody or a judicial "decree" awarding custody of a child and the custodian has "`acted upon'" the change of custody "`to the manifest interest and welfare of the child, the parent will not be permitted to reclaim the *Page 299 
custody of the child, unless [he or she] can show that a change of the custody will materially promote [the] child's welfare.'" 455 So.2d at 865 (quoting Greene v. Greene, 249 Ala. 155, 157,30 So.2d 444, 445 (1947)). The Supreme Court explained this material-promotion requirement, which is often referred to as the "McLendon standard" or the "McLendon presumption," as
 "`a rule of repose, allowing the child, whose welfare is paramount, the valuable benefit of stability and the right to put down into its environment those roots necessary for the child's healthy growth into adolescence and adulthood. The doctrine requires that the party seeking modification prove to the court's satisfaction that material changes affecting the child's welfare since the most recent decree demonstrate that custody should be disturbed to promote the child's best interests. The positive good brought about by the modification must more than offset the inherently disruptive effect caused by uprooting the child. Frequent disruptions are to be condemned.'"
Ex parte McLendon, 455 So.2d at 865-66 (quoting Wood v. Wood,333 So.2d 826, 828 (Ala.Civ.App. 1976)). The Supreme Court concluded its explanation of the standard by stating:
 "Although the best interests of the child are paramount, this is not the standard to be applied in this case. It is important that [the mother] show that the child's interests are promoted by the change, i.e., that she produce evidence to overcome the `inherently disruptive effect caused by uprooting the child.' Wood v. Wood, 333 So.2d at 828."
Ex parte McLendon, 455 So.2d at 866.
Whether the McLendon standard was the appropriate standard for the trial court to apply in this case depends on whether the trial court's August 21, 2001, award of temporary custody of the child to the father was merely a pendente lite order. If it was a pendente lite order, it did not create a McLendon presumption in the father's favor. See, e.g., Ex parte R.C.L.,627 So.2d 920 (Ala. 1993); Sims v. Sims, 515 So.2d 1 (Ala.Civ.App. 1987). After a careful review of the record and of each of the three judgments entered between June 1999 and July 2002, pursuant to which the trial court made changes of custody, including both the trial court's June 1999 judgment, which governed the custody of the child for more than two years and which the trial court considered not to be a pendente lite order but a "temporary custody" award to which the McLendon presumption applied, and the trial court's August 2001 judgment, with which the question at hand is directly concerned, we conclude that the August 2001 judgment did not make a pendente lite custody award, but instead made a temporary custody award of the nature to which theMcLendon presumption has been held to apply.
 "In dealing with custody cases, it is of paramount importance for a court to determine the kind of order it is entering or the kind of proceeding it is conducting; for example, it matters whether the court is entering a temporary order in contrast to a pendente lite order and whether it is conducting an initial/original proceeding as opposed to a modification proceeding. We recognize that the language used by the courts can be confusing, especially the language speaking of a temporary award of custody as a final order, as opposed to a pendente lite order, which is not a final order. However, we must keep in mind that, by its very nature, custody is always temporary and never permanent. *Page 300 
Although the temporary custody of a child may have been placed with someone, the court always retains jurisdiction to modify custody under the appropriate circumstances. This is to say that temporary custody is actually permanent custody subject to change. There must be a sense of finality to child placement, but that placement is always subject to change by the court when the facts and law before the court indicate that a change is required.
 "Semantically, this entire matter would be simpler if all courts declined to use the phrase `temporary custody' and simply used `pendente lite' or `custody' as the circumstances require.
 "Pendente lite orders are generally entered only during the pendency of the litigation and are usually replaced by a final order or judgment that is entered at the end of the litigation. Sims v. Sims, 515 So.2d 1 (Ala.Civ.App. 1987). In custody situations, a pendente lite order clearly envisions continuing custody pending a later final determination of that custody dispute, whereas `custody awards' are final and are generally intended to remain in effect until one of the parties succeeds in a petition requesting the court to modify its custody award. Sims, supra."
Ex parte J.P., 641 So.2d 276, 278 (Ala. 1994) (emphasis added).
Our appellate courts have held that a determination of custody generally intended to last until one of the parties successfully petitions the court to modify its judgment, even where the custody may be called "temporary" by the trial court, is a "prior judicial decree" for purposes of McLendon. See Ex parte J.P., 641 So.2d at 278; Sims, 515 So.2d at 2; Davis v. Moody,459 So.2d 914 (Ala.Civ.App. 1984); Chandler v. Manning,411 So.2d 160 (Ala.Civ.App. 1982). A "pendente lite custody" order does not constitute a judgment awarding custody for purposes ofMcLendon.
In the present case, the successive "temporary custody" awards made by the trial court on June 29, 1999, and August 21, 2001, were not made with the "pendency of the [existing] litigation" in mind. Ex parte J.P., 641 So.2d at 278. Instead, each of those judgments was a custody award made by the trial court in such a manner as to allow more facts to be developed — i.e., to allow a trial period with the custodial parent and to make it possible to base any subsequent change in custody on the history of the parties' relationships that developed during that period.
The trial court acknowledged in its August 2001 judgment that it was framing its award of custody to the father as one of "temporary custody," despite the fact that the child had already lived with the mother for a period of more than two full years under its previous "temporary custody" award and despite the fact that the court did not plan to review the custody award to the father until the following May. Despite this context for the court's actions, the trial court admitted that it was employing the concept of "temporary custody" in an effort to avoid the application of the McLendon presumption, stating that it had framed its award as one of temporary custody "to allow this Court to continue to use the less burdensome standard for custodial matters when this matter is reviewed at a future date." In response to the mother's postjudgment motion following the trial court's August 2001 judgment, however, the court was forced to agree with the mother's argument that the McLendon standard should apply, expressly finding that "the mother's motion correctly states that the McLendon rule would be required to be met to change even a temporary custodial order where a *Page 301 
non-custodial parent was seeking to regain custody."
In Sims, the court discussed the fact that there need be no change of circumstances in order for a trial court to change the custody of a child from that which was established in a previous pendente lite order. 515 So.2d at 2. Pendente lite orders, in other words, are only made for the "pendency of the litigation" of the existing case. Ex parte J.P., 641 So.2d at 278. It is clear that the custody awards at issue in the present case were not made by the trial court pending the litigation of theexisting case, but instead were made in anticipation of a "new case," i.e., newly developed facts, potentially being presented to the trial court at some future date. That is, they were custody awards intended to remain in place until such time, well into the future, as the trial court would "review" the case to determine whether there should be a modification of custody based upon changed circumstances that might have come into existence since the last custody award. Such awards are not pendente lite awards; rather, they are "temporary custody" awards of the nature addressed in Ex parte J.P., Sims, and Davis.[2] The trial court was not free to design its custody awards in this manner so as to avoid the application of the McLendon
standard.[3]
We are thus clear to the conclusion that the McLendon
presumption was applicable to the trial court's July 2002 judgment. It is not sufficiently clear to us, however, whether the trial court applied that standard. The case therefore must be remanded to allow the trial court to do so.
In reaching the conclusion that this case must be remanded, we have taken into consideration the various judgments and orders entered by the trial court prior to its July 2002 judgment, including, for example, the admission by the trial court in its August 2001 judgment that it had framed the custody award in that judgment as an award of temporary custody in order to allow the court to use the "less burdensome" best-interest standard that is available when the McLendon standard does not apply. In contrast, in its July 2002 judgment, the trial court makes no mention of the McLendon standard, nor any finding from which we are willing to assume in this case that the trial court determined that the child's interest would be "materially promoted" if custody were to be transferred to the mother. Instead, *Page 302 
the court speaks in terms of not being "inclined" to allow the child to remain in the father's home. Further, following the trial court's entry of its August 2001 judgment, the mother filed a postjudgment motion asking the trial court to reconsider its judgment because, she argued, it had not applied the McLendon
standard. In response, the trial court entered a postjudgment order expressly acknowledging and applying the McLendon
standard. In contrast, when the father filed a similar postjudgment motion following the entry of the trial court's July 2002 judgment, the trial court responded with an order that made no mention of the McLendon standard or any suggestion of a "material promotion" finding.[4]
In light of our remand of this case to the trial court for the entry of a judgment applying the McLendon standard, we pretermit discussion of the father's contention that the evidence was insufficient to meet that standard. Our decision to remand this case to the trial court for application of the McLendon
standard, however, should not in any way be construed as suggesting what the proper outcome, after the application of that standard, should be. The inquiry into factual determinations such as whether the positive good to be brought about by the proposed modification of custody will more than offset the disruptive effect of that modification should fall on the trial court, whose responsibility it is to make such determinations. Our remand merely recognizes the principle that "[t]he trial court must be allowed to be the trial court; otherwise, we (appellate court judges and justices) risk going beyond the familiar surroundings of our appellate jurisdiction and into an area with which we are unfamiliar and for which we are ill-suited — factfinding." Exparte R.T.S., 771 So.2d 475, 477 (Ala. 2000).[5]
REVERSED AND REMANDED. *Page 303 
PITTMAN, J., concurs.
CRAWLEY, J., concurs in the result, without writing.
YATES, P.J., dissents, with writing, which THOMPSON, J., joins.
[1] Further, we note that the father's wife admitted that she had consulted with the mother's attorney after the alleged incident of abuse. However, when questioned by the mother's counsel about whether the wife "remembered showing [her] the marks, where you had marks on you where [the father] had beaten you up," the wife stated, "He didn't beat me up. I had marks on my arms, scratches." The wife later stated that she did not know how the marks had gotten there.
[2] The fact that the trial court set in advance a subsequent hearing date to review future developments in the lives of the parties is not enough to change our view in this regard. In essence, the trial court merely "built in" to its custody award an automatic request by the noncustodial parent for a change of custody based on changes of circumstances that might subsequently develop. Viewed another way, the trial court attempted to build into its June 1999 and August 2001 judgments a mechanism for it to consider whether future developments would justify a modification of custody without the necessity of the noncustodial parent actually filing a petition to initiate that review.
[3] The phrase "pendente lite" is Latin for "while the action is pending." Black's Law Dictionary 1154 (7th ed. 1999). The manner in which pendente lite child-custody orders are treated allows trial courts, in making their final determinations of custody, to take into consideration developments that occurpending the litigation — that is, developments in the lives of the parties and the child that naturally occur during the unavoidable gap in time between the filing of an action and the time when the parties are ready for, and the court can schedule, a final hearing in the normal course of our judicial process. Sanctioning the approach utilized by the trial court in this case would distort the process by allowing a trial court to postpone the scheduling of a final hearing pending future developments
in the lives of the parties.
[4] That order, which is set out in its entirety above, makes reference to the child's "best interest" in addressing whether the child should live with his mother and father during equal periods of time.
The dissent states a belief that it is error to refer to this order of the trial court. Although this order is not effective for the purpose intended by the trial court because it was entered beyond the 90-day period prescribed by Rule 59.1, Ala. R. Civ. P., see Doe v. Markham, 776 So.2d 757 (Ala. 2000), we do not rely upon it for that purpose; instead, we make note of it only for the insight that it provides into the analytical approach the trial court may have used in reaching its July 2002 judgment.
[5] The dissent cites Ex parte Johnson, 673 So.2d 410 (Ala. 1994), for the proposition that this court can review the evidence in light of the standard set out in McLendon, rather than remanding the case to the trial court. In Ex parteJohnson, however, the Supreme Court held that the Court of Civil Appeals erred by holding the trial court in error for not receiving additional evidence in connection with a Rule 59, Ala. R. Civ. P., motion and remanding the case to the trial court to receive such evidence. The Supreme Court merely held that the Court of Civil Appeals should have proceeded to conduct an appellate review of the order entered by the trial judge on the mother's Rule 59 motion, which had become the final judgment of the trial court in response to a petition by the father for a modification of custody. In so holding, the Supreme Court simply noted that the substantive legal standard applicable to the trial court's judgment was the "material promotion" standard established in Ex parte McLendon, and that the Court of Civil Appeals should conduct its appellate review of the trial court's final judgment with that legal standard in mind. Nothing in the opinion suggested, however, that the Court of Civil Appeals should become a fact-finder or should substitute its findings of fact for those of the trial court. In other words, Ex parteJohnson does not stand for the proposition that the normalappellate review standard would not be applicable in a case such as that presented here. See generally West v. Rambo,786 So.2d 1138 (Ala.Civ.App. 2000) (applying appellate review standard of "plain and palpable" error as to a trial court's findings of fact based on its receipt of ore tenus testimony);Hinds v. Hinds, 887 So.2d 267, 272-73 (Ala.Civ.App. 2003) (note 2 and accompanying text).
In addition, we note that the case of Williams v. Williams,812 So.2d 352 (Ala.Civ.App. 2001), which is also relied on by the dissent, is distinguishable from the present case. In Williams, this court affirmed the judgment of the trial court on the ground that there was sufficient evidence to support that judgment. Nothing in this court's opinion in Williams indicates that it did not apply well-established appellate review standards in making that determination. In the present case, however, we simply cannot determine whether the trial court has applied theMcLendon standard. The dissent is correct that the finding of domestic abuse under § 30-3-134, Ala. Code 1975, does constitute a change in circumstances, as a matter of law, under that statute. The determination of whether there will be a "material promotion" of the child's best interests in the event the requested change of custody is ordered, however, is a different determination that should be made in the first instance by the trial court.