897 So.2d 358 (2004)
Claudia Blinn TREVINO
v.
Mark Kenneth BLINN.
2030303.
Court of Civil Appeals of Alabama.
September 24, 2004.
J. Rick Hollingsworth, Enterprise, for appellant.
Robert H. Brogden, Ozark, for appellee.
PITTMAN, Judge.
This appeal arises from custody litigation between Claudia Blinn Trevino ("the mother") and Mark Kenneth Blinn ("the father"), who are the divorced parents of a minor child born in March 1995. The parties were divorced by the Dale Circuit Court in October 1999, and legal custody of the child was vested jointly in the parties, with primary physical custody being vested in the mother; the father was directed to pay child support to the mother and was awarded specified visitation with the child. The mother remarried in September 2001, and she and her new husband moved to Germany with the minor child, prompting the father to seek a modification of custody; the trial court denied the father's request to modify custody in May 2002, but it later adopted a new visitation schedule for the two-year period during which the mother, her new husband, and the child expected to live in Germany.
In March 2003, the father filed a second modification petition, alleging that the mother had failed or refused to comply with the trial court's amended visitation provisions and had limited the child's telephone contact with the father; the father contended that the mother's actions were detrimental to the best interests of the child and that the positive effects of changing *359 custody outweighed any detrimental effects of removing the child from his environment. The mother filed a motion to dismiss, which was denied; she then filed an answer, in which she denied the pertinent allegations of the father's petition and challenged the trial court's jurisdiction, as well as a counterclaim seeking a finding of contempt with respect to the father's alleged failure or refusal to pay child support.
Upon becoming aware that the mother had attempted to file a parallel custody proceeding in a German court in which she effectively sought the termination of his parental rights, the father filed a "motion for emergency relief" in which he averred that the mother would not allow the child to return to the United States and in which he requested that the trial court issue an order allowing the father to keep the child in the United States pending a final hearing. That motion was granted on August 5, 2003, and a further hearing was set for September 30, 2003.
After the September 30, 2003, hearing, the trial court issued an order on October 23, 2003, in which it found the actions of the mother to be "a threat to the lawful enforcement of its orders." The trial court found the mother to be in contempt "for her willful disobedience and resistance to th[e trial] court's orders regarding" custody and visitation, and it found the father to be in contempt for having willfully failed to pay child support. The trial court's order addressed the custody issue as follows:
"2. The father shall have the temporary physical custody of the parties' minor child until the mother moves her permanent residence to the United States or until July 1, 2004, whichever shall first occur. Temporary custody in the father shall continue thereafter until the matter is brought before the court on motion of either party for an order of permanent custody.
"3. Pending further orders the mother shall have visitation with the minor child in the United States at a reasonable place and time upon surrendering the child's passport to a neutral party, the court if necessary, to hold pending the visitation period."
In addition, the father's child-support obligation was prospectively terminated and the parties were directed to file income affidavits. The mother thereafter filed a "motion to reconsider" the order as it pertained to custody; the trial court denied that motion. The trial court ultimately amended its order by directing the mother to pay child support, and it then issued a "supplemental order" to include additional provisions required under the Alabama Parent-Child Relationship Protection Act, § 30-3-160 et seq., Ala.Code 1975.
The mother appealed. On appeal, she contends that the trial court erred in awarding custody to the father. In addition to addressing the merits of the trial court's custody award, the father contends that the mother's appeal should be dismissed because, he says, the trial court's October 23, 2003, order is not a final judgment as to custody.
We agree with the father that the trial court has not entered a final judgment with respect to custody. The trial court's order states that the father has been awarded temporary physical custody until July 1, 2004, at the latest; however, the trial court's order also provides that the father's temporary custody will continue after that date "until the matter is brought before the court on motion of either party for an order of permanent custody" and that the mother shall have "reasonable" visitation with the child "[p]ending further orders" (emphasis added). The trial court has thus left the *360 parties' rights to custody and visitation for a final determination upon either party's filing a motion reviving the issue in that court.
The trial court's deferral of a final judgment concerning custody and visitation in this case is similar to what occurred in S.S. v. T.R.A., 716 So.2d 719 (Ala.Civ.App.1998). In S.S., the trial court awarded temporary custody of the two minor children of the parties in that case to their mother, but it scheduled a review hearing at which, the trial court indicated, it would "`hear any relevant and material evidence which the parties may wish to offer with respect to the mother's custody being made permanent.'" 716 So.2d at 720. We dismissed the father's appeal from the trial court's order in that case as having been taken from a nonfinal judgment, reasoning:
"Although somewhat confusing, an order awarding `temporary' custody can be either a pendente lite order or a final order. As the Supreme Court has explained:
"`Semantically, this entire matter would be simpler if all courts declined to use the phrase "temporary custody" and simply used "pendente lite" or "custody" as the circumstances require.
"`Pendente lite orders are generally entered only during the pendency of the litigation and are usually replaced by a final order or judgment that is entered at the end of the litigation. Sims v. Sims, 515 So.2d 1 (Ala.Civ.App.1987). In custody situations, a pendente lite order clearly envisions continuing custody pending a later final determination of that custody dispute, whereas "custody awards" are final and are generally intended to remain in effect until one of the parties succeeds in a petition requesting the court to modify its custody award. Sims, supra.'"
716 So.2d at 720 (quoting Ex parte J.P., 641 So.2d 276, 278 (Ala.1994)). Accord, B.W.C. v. State Dep't of Human Res., 582 So.2d 579, 580 (Ala.Civ.App.1991) (dismissing grandparents' appeal where mother and father had sought permanent custody but trial court had awarded father only temporary custody and had stated that a permanent-custody award would later replace the temporary-custody award).
We are aware that the second sentence of paragraph 2 of the trial court's custody order provides that the temporary custody vested in the father "shall continue ... until the matter is brought before the court on motion of either party for an order of permanent custody." That provision, however, does not create an ambiguity that would warrant remanding the case and delaying the trial court's resolution of the issue of permanent custody  an issue that, because the date is now after July 1, 2004, is now ripe for decision. First, the trial court itself has made a distinction in that provision between the current custody arrangement and a final, binding custody arrangement to be determined in the future. Also, the trial court directed either party to file a motion in the pending case in order to obtain a permanent custody order. Had the trial court truly intended to make a final award of custody on October 23, 2003, either it would have made no reference to how that custody determination could be revisited or it would have directed that the filing of a new petition for modification of custody, i.e., the initiation of a new case, was necessary. See Opinion of the Clerk, 345 So.2d 1329, 1330 (Ala.1977) (although "a proceeding to modify a final decree, such as a decree of divorce concerning... child custody on the basis of a change in circumstances," is a new case, a motion filed in a pending *361 case to alter the terms of a final decree is not a new case).
Moreover, we are not convinced that the decision in Rich v. Rich, 887 So.2d 289 (Ala.Civ.App.2004) (in which two Judges concurred and one Judge concurred in the result), warrants a contrary conclusion. Unlike the judgment entered on August 21, 2001, by the trial court in Rich, the trial court's custody order in this case expresses no inclination "`to continue to use the less burdensome standard for custodial matters'" so as to indicate a potentially illegitimate desire to perpetually avoid finality. Rich, 887 So.2d at 300. Instead, the trial court's order in this case simply vests custody in the father until the mother has been allowed reasonable time to return to the United States, at which time the trial court will entertain a motion to finally adjudicate the father's petition, i.e., to award permanent custody. A petition for mandamus pursuant to Rule 21, Ala. R.App. P., and not an appeal, is the proper mechanism available to a party who deems himself or herself aggrieved by a pendente lite custody order such as the one entered in this case. S.S., 716 So.2d at 720.
Because the trial court has not entered a final judgment concerning the custody of the parties' child, we dismiss the mother's appeal. The father's request for an attorney-fee award on appeal is denied.
APPEAL DISMISSED.
YATES, P.J., and THOMPSON, J., concur.
CRAWLEY, J., dissents, with writing.
MURDOCK, J., dissents, with writing, which CRAWLEY, J., joins.
CRAWLEY, Judge, dissenting.
I agree with the principles stated in Judge Murdock's dissenting opinion; however, I write separately to note my concern regarding the trial court's judgment. Although the trial court's "temporary custody" order appears in one part to indicate that the award of custody to the father was a temporary arrangement pending either the relocation of the mother to the United States or the arrival of the July 1, 2004, date specified in the order, the second sentence of paragraph 2 of the order as quoted in the majority opinion continues "temporary custody" in the father until one of the parties moves for an order of "permanent custody." The trial court's custody award is not a pendente lite custody award  i.e., one made pending a review hearing or a further hearing on the matter that was before the court at the time of the judgment; instead, it appears that the trial court's October 23, 2003, order settles the custody issue either until the mother relocates to the United States or until July 1, 2004, whichever occurs first, or until a party  either the mother or the father  files a motion at a later date for "permanent custody." In other words, the custody award is ambiguous.
Our supreme court has clearly indicated that the use of the terms "temporary" and "permanent" in regard to custody orders does nothing but engender confusion. Ex parte J.P., 641 So.2d 276, 278 (Ala.1994). The trial court's order in the present case is a fine example of the confusion engendered by the improper use of those terms.
Because the trial court's order is ambiguous, I believe that the proper course in the present case would be to remand the cause to the trial court with instructions that it properly label its custody award without the use of the words "temporary" and "permanent." In addition, upon remand, the trial court can also amend paragraph 2 to clearly indicate whether it intended that custody revert to the mother if and when she relocated to the United *362 States or on July 1, 2004, or if it intended that the father would have custody until one of the parties filed a modification petition. Quite simply, the judgment cannot mean both things.
MURDOCK, Judge, dissenting.
The result of the main opinion in this case is to make nonappealable a custody award that, by its terms, fixes the custody of the child for up to eight months and that, unless a party seeks some further action by the court, will remain in place indefinitely. This result follows from the main opinion's treatment of the custody award as a pendente lite award. Like Judge Crawley, I do not think the custody award at issue can properly be viewed or treated as a pendente lite award.
In his separate writing, Judge Crawley states:
"The trial court's custody award is not a pendente lite custody award  i.e., one made pending a review hearing or a further hearing on the matter that was before the court at the time of the judgment; instead, it appears that the trial court's October 23, 2003, order settles the custody issue either until the mother relocates to the United States or until July 1, 2004, whichever occurs first, or until a party  either the mother or the father  files a motion at a later date for `permanent custody.'"
897 So.2d at 361 (Crawley, J., dissenting). As I read the trial court's order, that court has declared that custody is to be in the father and that that court will not make any further change of custody until either the mother returns to the United States or July 1, 2004, a date more than eight months after the date of the trial court's order.[1] This aspect of the trial court's order, alone, makes the custody award at issue one that is not "pendente lite"  i.e., one that is pending the completion of discovery and the holding of a hearing on the matter that is already before the court  but instead one that is intended to remain in place pending an extrinsic future event or passage of a fixed time. In addition, however, the order contemplates that the award of custody to the father will remain in effect indefinitely even after the mother's return to the United States or July 1, 2004, unless the mother makes another filing seeking a further change of custody.
It is not clear whether the mother, at such time in the future as she may choose to file what the trial court refers to as a "motion" to transfer custody back to her, must make a further evidentiary showing to establish that the change of custody is justified under the facts in existence at that time. If such a showing is to be required, then the "motion" referred to in the trial court's order can only be properly treated as a new "petition," whether designated by the trial court as such or not. This is so because, if such a showing is to be required, that "motion" will entail a request that the trial court decide the custody of the child based on facts as they will come to exist at that future time, including whatever developments may occur in relation to the parties and the child between the time of the present order and the future adjudication. Alternatively, if no such showing will be required, then the trial court's present order amounts to a declaration that it will, at that future time, adjudge what custodial arrangement will be in the best interest of the child based on the present record (plus the fact of the mother's return to this country or the passage of a period of more than eight *363 months of time). Obviously, that record does not, and will not, reflect whatever developments in the lives of the parties and the child may occur between now and then. Such an approach would be a distortion of the process and is not the purpose for which pendente lite orders were intended. The trial court had an obligation to decide the custody dispute submitted to it by the parties based on the present facts, and not to wait upon some additional facts, i.e., a different case, to develop.
It is one thing for a trial court to take into consideration developments that unavoidably occur between the time of the filing of an action and the time when the litigation process has run its normal course and the court conducts a hearing. It is another, however, for the trial court to postpone the litigation process and the setting of a hearing in order to allow some additional set of facts to come into existence. The former is part and parcel of the normal judicial process. The latter distorts that process. It results in the trial court's deciding a different case than that which was presented to it by the parties. A trial-court order designed to achieve the latter result, therefore, cannot properly be considered an order "pending the litigation of the existing case," or "pendente lite." See Rich v. Rich, 887 So.2d 289, 301 (Ala.Civ.App.2004).
In Rich, this court determined that the trial court's "temporary custody" award must be treated as final for purposes of what is commonly referred to as the McLendon presumption. See Ex parte McLendon, 455 So.2d 863 (Ala.1984). Much of what was said in Rich is applicable to the present case:
"Our appellate courts have held that a determination of custody generally intended to last until one of the parties successfully petitions the court to modify its judgment, even where the custody may be called `temporary' by the trial court, is a `prior judicial decree' for purposes of [Ex parte] McLendon [, 455 So.2d 863 (Ala.1984)]. See Ex parte J.P., 641 So.2d [276,] 278 [(Ala.1994)]; Sims [v. Sims], 515 So.2d [1,] 2 [(Ala.Civ.app.1987)]; Davis v. Moody, 459 So.2d 914 (Ala.Civ.App.1984); Chandler v. Manning, 411 So.2d 160 (Ala.Civ.App.1982)....
"....
"... Pendente lite orders ... are only made for the `pendency of the litigation' of the existing case. Ex parte J.P., 641 So.2d at 278. It is clear that the custody awards at issue in the present case were not made by the trial court pending the litigation of the existing case, but instead were made in anticipation of a `new case,' i.e., newly developed facts, potentially being presented to the trial court at some future date. That is, they were custody awards intended to remain in place until such time, well into the future, as the trial court would `review' the case to determine whether there should be a modification of custody based upon changed circumstances that might have come into existence since the last custody award. Such awards are not pendente lite awards; rather, they are `temporary custody' awards of the nature addressed in Ex parte J.P., Sims, and Davis. The trial court was not free to design its custody awards in this manner so as to avoid the application of the McLendon standard.3
"3 The phrase `pendente lite' is Latin for `while the action is pending.' Black's Law Dictionary 1154 (7th ed.1999). The manner in which pendente lite child-custody orders are treated allows trial courts, in making their final determinations of custody, to take into consideration developments that occur pending *364 the litigation  that is, developments in the lives of the parties and the child that naturally occur during the unavoidable gap in time between the filing of an action and the time when the parties are ready for, and the court can schedule, a final hearing in the normal course of our judicial process. Sanctioning the approach utilized by the trial court in this case would distort the process by allowing a trial court to postpone the scheduling of a final hearing pending future developments in the lives of the parties."
Rich, 887 So.2d at 300-01 (some emphasis in original; some emphasis added; footnote 2 omitted).
The above analysis from Rich is relevant not because this case involves a trial-court order that evidences an inclination" `to continue to use the less burdensome standard for custodial matters,'" as was the situation in Rich. Rich, 887 So.2d at 294 (emphasis omitted). Nor is there necessarily any illegitimate purpose on the part of the trial court to avoid finality in the present case. Instead, the similarity between this case and Rich, and the reason much of the analysis from Rich is applicable to the present case, is that, whether purposeful or not, the structure of the trial court's order in this case has the effect of making what the Supreme Court in Ex parte J.P. called a "custody" award, not a "pendente lite" award. As the Supreme Court held in Ex parte J.P., an order that fixes custody until the holding of a hearing is one that is "pendente lite"; an order that fixes custody until the occurrence of some event or passage of time, extrinsic to the litigation process is not made pending the existing litigation or "pendente lite." Id. As in Rich, the effect of the trial court's order in the present case is to "distort the process by allowing [the] trial court to postpone the scheduling of a final hearing pending future developments in the lives of the parties." Rich, 887 So.2d at 301 n. 3 (emphasis omitted).
The trial court's order in this case is a final declaration of who shall have custody of the child until such time as there are future developments extrinsic to the litigation. Indeed, it is more than that  it is a final declaration of who shall have custody of the child until after the extrinsic developments and a future request for relief is presented to the trial court. That, by definition, is not an award of custody pending the litigation, whether the trial court intended it to be or not. That order, therefore, must be appealable. Because this court's dismissal of the present appeal has the effect of making that order nonappealable, I must respectfully dissent.
CRAWLEY, J., concurs.
NOTES
[1] The court's "tying" of its own hands in this manner is in and of itself problematic. Our law requires that a change of custody be made whenever material changes in circumstances warrant the change. See Ex parte McLendon, 455 So.2d 863 (Ala.1984).