The parties were divorced by the Coffee Circuit Court in 1993. Catherine R. Steinwinder ("the mother") was awarded sole physical custody of the parties' two children — daughters who were then one and three years old; William Jason Hodge ("the father") was ordered to pay child support in the amount of $250 per month. After the divorce, the mother and children moved twice — first to Montgomery County in March 1998 and then to Jefferson County in August 2001. The father has continued to reside in Coffee County.
In April 2001, the mother filed in the Montgomery Circuit Court a contempt action and a petition to modify the divorce judgment, alleging that the father was in arrears in his child-support payments and seeking an increase in child support. On November 1, 2001, the Montgomery Circuit Court entered a judgment awarding the mother $6,000 in past-due child support and increasing the father's child-support obligation to $600 per month. *Page 1180 
On August 8, 2003, the father filed in the Coffee Circuit Court a petition to modify the divorce judgment, seeking physical custody of the children and requesting immediate pendente lite custody based on allegations that the children were being neglected by their mother and emotionally abused by their stepfather. On August 9, the Coffee Circuit Court entered an ex parte order awarding pendente lite custody of the children to the father. On August 11, the mother filed a motion to dismiss the father's petition based on improper venue, alleging that the proper venue for the action was the Montgomery Circuit Court, because, the mother asserted, Montgomery County had been the county of her residence for three years and had been the venue of the earlier contempt and modification action that she had filed — factors that, according to the mother, made Montgomery County the proper venue until such time as she had established a three-year residency elsewhere, thus making venue proper in another county. On August 14, 2003, the Coffee Circuit Court transferred the action to the Montgomery Circuit Court. On September 15, 2003, the father filed a motion in the Montgomery Circuit Court, asking it to "reconsider" the transfer of the action to that court. On October 22, 2003, the Montgomery Circuit Court denied the father's motion.
On October 23, 2003, the Montgomery Circuit Court appointed a guardian ad litem ("GAL") for the parties' children, who were then almost 12 and 14 years old. On May 19, 2004, the court appointed Dr. Karl Kirkland, a clinical psychologist in Montgomery, as a counselor for the children, pursuant to a request by the GAL. On May 25, 2004, the court conducted an evidentiary hearing.
On June 4, 2004, the GAL submitted an interim report, recommending that custody of the children be returned to the mother; that the children reside with the maternal grandparents in Montgomery for the summer and that, during that time, the children attend "intensive and concentrated counseling sessions" with Dr. Kirkland; that Dr. Kirkland consult with the GAL as to a final custody recommendation at the end of the summer; and that the GAL make a final recommendation to the trial court before the beginning of the 2004-2005 school year.
In a written order entered on June 9, 2004, the trial court determined that the father had failed to present sufficient evidence, pursuant to the standard enunciated in Ex parteMcLendon, 455 So.2d 863 (Ala. 1984), to warrant a change of custody. The court restored physical custody of the children to the mother, conditioned on the children's residing with the maternal grandparents pending further orders of the court. The order further stated, in pertinent part:
 "3. That, while the girls are residing with their grandparents, both parents shall have liberal rights of visitation with the girls at such times and places as the parties may agree. If they cannot agree, such visitation shall be arranged by the [GAL].
 "4. That Dr. Kirkland, previously appointed, after having counseled with the children, shall consult with the [GAL] as to his findings and recommendations.
 "5. That the [GAL] shall make her final recommendation to the Court, based on the advice of and counsel of Dr. Kirkland and the events that transpire over the months of June and July, not later than August 2, 2004, so that the Court can make a final decision in time for the children to begin the school year at the home of one parent or the other." *Page 1181 
Dr. Kirkland filed an interim report, dated July 18, 2004, advising the court that he was unable at that time to make a final custody recommendation because of the "severe alienation" between the children and the mother and stepfather. He suggested the "middle ground approach" of placing the children "for the next academic year in Montgomery at the home of the maternal grandparents, who could then foster contact with both sides." Dr. Kirkland noted that "[t]his [was] the most complex post-divorce case [he had] ever encountered" and stated that there were no "easy answers." The GAL's final recommendation, submitted on August 2, 2004, was that the children live with the maternal grandparents for a year.
On August 11, 2004, the Montgomery Circuit Court entered an order incorporating the reports of Dr. Kirkland and the GAL and fashioning, in pertinent part, the following solution to the custody question:
 "Having received the final recommendation of the [GAL], including the reports from Dr. Kirkland, the Court is faced with making a final decision that will not satisfy anyone.
 "These girls still want to live with their father but the schism (chasm) between them and their mother must be closed lest there be long-term consequences of the alienation, whatever its cause. Something must be done immediately due to the start of school.
 "The solution is for them to reside with the maternal grandparents in Montgomery. [The stepfather] will be out of the [country] for a year, starting in October. [The mother] is willing to move to Montgomery and live with her parents and the girls during that year. If she can reconcile the girls to herself, perhaps they will be willing to return to her home in Birmingham at the end of the school year. If she cannot, even after a year, one would hope that she voluntarily would consent to their returning to [the father].
 "These parents created this situation and they are reaping the pain of the crop they have sown. The Court's concern is for the best interest of the children, within the parameters of the law.
 "It is, therefore, ORDERED, ADJUDGED, AND DECREED as follows:
 "1. That, effective immediately, the girls shall reside with the maternal grandparents, . . . for this school year and shall be enrolled in and attend school in Montgomery County.
 "2. That [the father] shall have the right to visit with the children on alternate weekends from the close of school on Friday until 6:00 p.m. on the following Sunday.
 "3. That holiday visitation shall be as originally provided.
 "4. That Dr. Kirkland shall continue counseling toward a solution of these family difficulties.
 "5. That child support shall resume beginning September 1st but payments shall be made to the maternal grandparents, . . . rather than [to the mother]."
On August 11, the father filed in this court a petition for a writ of mandamus and a motion for an emergency stay of the Montgomery Circuit Court's order of the same date. The petition was directed to the Coffee Circuit Court and sought review of that court's transfer of the proceedings to Montgomery County. On August 18, this court denied the petition without opinion. On August 19, the mother filed a motion with the Montgomery Circuit Court to enforce that court's August 11 order. On August 20, the trial court granted the mother's motion and ordered that the children be transported *Page 1182 
to the home of the maternal grandparents by 6:00 p.m. on August 22.
On August 25, the father filed a notice of appeal and a motion for an emergency stay of the Montgomery Circuit Court's August 11 and August 20 orders. The father alleged
 "[that he] had made a diligent effort to comply with the [Montgomery Circuit] Court's [August 20] order, including involvement of [Dr. Kirkland] and calling upon the Montgomery Police Department for assistance in transferring the children. Notwithstanding those efforts, the children refused to get out of the car at the maternal grandmother's home and the [father] returned with the children to Coffee County after three hours at the maternal grandmother's home. The younger child threatened to run away and the older child threatened suicide if they were forced to remain in Montgomery."
Simultaneously, the father filed in this court a motion to expedite the appeal. On August 26, this court granted a temporary stay pending the receipt of briefs from the parties on the issue of the finality of the trial court's August 11 order. On September 7, this court granted a stay of the circuit court's August 11 and August 20 orders and expedited the appeal.
 The Finality of the August 11 and August 20 Orders
We hold that the Montgomery Circuit Court's August 11 and August 20 orders meet the requirements of final judgments from which an appeal will lie. We therefore necessarily conclude that the orders were not pendente lite orders.
In Rich v. Rich, 887 So.2d 289 (Ala.Civ.App. 2004) (Murdock, J., with one Judge concurring and one Judge concurring in the result), this court explained the distinction between a pendente lite custody award and a custody award that, for lack of a better term, might be called a "trial" or "experimental" custody arrangement, made by the trial court in an attempt to "make it possible to base any subsequent change in custody on the history of the parties' relationships that developed during th[e] [trial] period." 887 So.2d at 300.
In Rich, the trial court had entered a series of what it termed "temporary" custody orders in an attempt to determine which of the two parents — both of whom had medical conditions potentially affecting their parenting abilities, and one of whom had a history of substance abuse — would be the more fit custodian. This court was called upon to determine whether any of the so-called "temporary" custody orders was a final judgment — rather than a mere pendente lite order — for purposes of applying the Ex parte McLendon, 455 So.2d 863 (Ala. 1984), presumption to a custody-modification request.
Relying on the opinion of our supreme court in Ex parte J.P.,641 So.2d 276 (Ala. 1994), this court in Rich first explained that all custody orders are "temporary" in the sense that they are modifiable under appropriate circumstances. Thus, we said, the use of the term "temporary custody" is not helpful in deciding whether a particular custody order constitutes a final judgment. Instead, this court pointed out that the pertinent inquiry is whether a custody award is a pendente lite order — which is effective only during the pendency of the litigation and is usually replaced by the entry of a final judgment at the end of the litigation — or whether a custody award is a "custody order" — which is final (and therefore appealable) until one of the parties succeeds in a request to modify the order.
 "The phrase `pendente lite' is Latin for `while the action is pending.' Black's Law Dictionary 1154 (7th ed. 1999). The manner in which pendente lite *Page 1183 
child-custody orders are treated allows trial courts, in making their final determinations of custody, to take into consideration developments that occur pending the litigation — that is, developments in the lives of the parties and the child that naturally occur during the unavoidable gap in time between the filing of an action and the time when the parties are ready for, and the court can schedule, a final hearing in the normal course of our judicial process."
Rich v. Rich, 887 So.2d at 301 n. 3. This court concluded that the circuit court's "temporary" custody orders in Rich were not pendente lite orders because they did not merely allow the circuit court to consider "developments in the lives of the parties and the child that naturally occur[red] during the unavoidable gap in time between the filing of [the] action and the . . . final hearing" in the case. We explained that considering the circuit court's "temporary custody" orders as pendente lite determinations would be
 "[s]anctioning . . . [a] distort[ion] [of] the [judicial] process by allowing a trial court to postpone the scheduling of a final hearing pending future developments in the lives of the parties."
Rich v. Rich, 887 So.2d at 301 n. 3. We stated:
 "In the present case, the successive `temporary custody' awards made by the trial court on June 29, 1999, and August 21, 2001, were not made with the `pendency of the [existing] litigation' in mind. Ex parte J.P., 641 So.2d [276] at 278 [(Ala. 1994)]. Instead, each one of those judgments was a custody award made by the trial court in such a manner as to allow more facts to be developed — i.e., to allow a trial period with the custodial parent and to make it possible to base any subsequent change in custody on the history of the parties' relationships that developed during that period."
Rich v. Rich, 887 So.2d at 300 (emphasis added). Finally, this court held:
 "It is clear that the custody awards at issue in the present case were not made by the trial court pending the litigation of the existing case, but instead were made in anticipation of a `new case,' i.e., newly developed facts, potentially being presented to the trial court at some future date. That is, they were custody awards intended to remain in place until such time, well into the future, as the trial court would `review' the case to determine whether there should be a modification of custody based upon changed circumstances that might have come into existence since the last custody award. Such awards are not pendente lite awards; rather, they are `temporary custody' awards of the nature addressed in Ex parte J.P., [641 So.2d 276 (Ala. 1994),] Sims [v. Sims, 515 So.2d 1 (Ala.Civ.App. 1987)], and Davis [v. Moody, 459 So.2d 914 (Ala.Civ.App. 1984)]."
Rich v. Rich, 887 So.2d at 301 (footnote omitted).
In the present case, the Montgomery Circuit Court did not make its August 11 and August 20 custody awards to the maternal grandparents as an interim solution pending a final hearing and judgment in the case; the court had already conducted a final hearing on May 25, 2004, and had determined that the father had failed to meet his burden of proof pursuant to McLendon.
Instead, the circuit court fashioned the custody award to the maternal grandparents to "allow more facts to be developed —i.e., to allow a trial period with the [grandparents] and to makeit possible to base any subsequent change in custody on thehistory of the parties' relationships that developed during thatperiod." *Page 1184 Rich v. Rich, 887 So.2d at 301 (emphasis added). The August 11 and August 20 orders were "final declaration[s] of who shall have custody of the child[ren] until such time as there are future developments extrinsic to the litigation. . . . and a future request for relief is presented to the trial court."Trevino v. Blinn, 897 So.2d 358, 364 (Ala.Civ.App. 2004) (Murdock, J., dissenting). The orders are, therefore, final judgments from which an appeal will lie.
 Venue of the Father's Petition to Modify Custody
The father argues that the Coffee Circuit Court erred by transferring the action to the Montgomery Circuit Court. In support of that argument, he cites § 30-3-5, Ala. Code 1975, andEx parte Hester, 682 So.2d 6 (Ala. 1996). The mother contends, citing Ex parte Tanksley, 418 So.2d 94 (Ala. 1982), that the father's delay in challenging the change of venue to Montgomery County and the father's participation in the litigation in Montgomery County constitute a waiver of the improper-venue issue.
Section 30-3-5, Ala. Code 1975, provides:
 "Notwithstanding any law to the contrary, venue of all proceedings for petitions or other actions seeking modification, interpretation, or enforcement of a final decree awarding custody of a child or children to a parent and/or granting visitation rights, and/or awarding child support, and/or awarding other expenses incident to the support of a minor child or children, and/or granting post-minority benefits for a child or children is changed so that venue will lie in: (1) the original circuit court rendering the final decree; or (2) in the circuit court of the county where both the current custodial parent or, in the case of post-minority benefits, where the most recent custodial parent, that parent having custody at the time of the child's attaining majority, and the said child or children have resided for a period of at least three consecutive years immediately preceding the filing of the petition or other action. The current or most recent custodial parent shall be able to choose the particular venue as herein provided, regardless of which party files the petition or other action."
Based on the plain language of § 30-3-5, it is evident that venue of the father's petition to modify was proper only in the Coffee Circuit Court — the court in which the parties' 1993 divorce judgment was rendered — because the mother had not resided in Montgomery County for three consecutive years immediately preceding the filing of the father's 2003 petition to modify. The fact that the mother had established a three-year residency in Montgomery County at some earlier point and that Montgomery County had been the proper venue for a previous proceeding is immaterial in light of the fact that, at the time the father filed his 2003 petition, the mother had moved to Jefferson County but had not established a three-year residency in Jefferson County. See Ex parte Hester, supra.
In Hester, the Colbert Circuit Court divorced the parties in 1989 and awarded custody of the parties' son to the father. In 1992, the father and the son moved to Franklin County. After 1992, the parties litigated several requests for modification in the Colbert Circuit Court. In 1995, the mother petitioned for custody of the son, and the father moved to have the mother's petition transferred to the Franklin Circuit Court. The Colbert Circuit Court denied the father's request, noting that the father had never before sought a change of venue to Franklin County. The father petitioned *Page 1185 
this court for a writ of mandamus; we denied the petition and the father sought the same relief in the supreme court. The supreme court granted the petition and issued the writ, holding that the father had a clear legal right to choose the venue of the petition to modify. The court stated:
 "The fact that in the past the father has litigated petitions to modify the divorce judgment in the Colbert Circuit Court does not alter his statutory right to choose the venue of this proceeding; the father had not lived in Franklin County for the requisite three years at the time of the prior litigation, and the choice of venue there was thus not then available to him."
Ex parte Hester, 682 So.2d at 8 (emphasis added). Hester
effectively refutes the mother's argument that Montgomery County was the proper venue of the father's modification proceeding by virtue of its having been the venue of an earlier postdivorce proceeding.
The mother relies upon Ex parte Tanksley, supra, for the proposition that the father's delayed challenge to the change of venue to Montgomery County and the father's participation in the Montgomery County litigation waived the venue issue. InTanksley, our supreme court held that the plaintiff in a wrongful-death action had waived his challenge to improper venue by failing to object in a timely manner to the defendant's motion for a change of venue and by participating thereafter in litigating the action in the new venue. In our judgment,Tanksley has been implicitly overruled by later decisions of the Alabama Supreme Court. See Ex parte Sawyer, 873 So.2d 166
(Ala. 2003); Ex parte MedPartners, Inc., 820 So.2d 815 (Ala. 2001); and Elmore County Comm'n v. Ragona, 540 So.2d 720 (Ala. 1989).
In Ex parte Sawyer, which was decided 21 years afterTanksley, the supreme court held that once a change of venue has been accomplished and the case has been docketed by the transferee court, the party opposing the change of venue has no mechanism, in either the transferee or the transferor court, for objecting to the change of venue. The party's sole mechanism,at that point, is to file a petition for the writ of mandamuswith the appropriate appellate court, requesting that the writ be directed to the transferor court.
 "`Once the transferor court has granted the motion to transfer the case and the file has been sent to, and docketed by, the transferee court, the transferor court cannot then change its mind and vacate or set aside its transfer order or order the case returned. Ex parte Morrow, 259 Ala. 250, 66 So.2d 130 (1953). Furthermore, the trial judge of the transferee court may not consider a motion to retransfer the case to the county in which it was originally filed. Ex parte Tidwell Indus., Inc., 480 So.2d 1201 (Ala. 1985). The aggrieved party's sole remedy in such a case is a petition for writ of mandamus directed to the transferor court.
 "`"Where the trial court has improperly ordered a transfer, mandamus against the transferor court is an appropriate remedy, notwithstanding the fact that an order has been entered which moves the case to the transferee court. The transferee court lacks authority to consider a motion to retransfer an action to the county in which it was initially filed. Mandamus to the transferor court is the appropriate avenue for seeking redress of any error in the transfer."
 "`2 Champ Lyons, Jr., Alabama Rules of Civil Procedure Annotated § 82.4, p. 553 (3d ed. 1996) (citations omitted).'"
Ex parte Sawyer, 873 So.2d at 167 (quoting Ex parteMedPartners, Inc., *Page 1186 820 So.2d at 821). See also Dennis v. Holmes Oil Co., 757 So.2d 479
(Ala.Civ.App. 2000).
In Ragona, a case decided seven years after Tanksley, the supreme court, overruling prior cases to the contrary, held that an aggrieved party is not limited to filing a petition for the writ of mandamus to the transferor court, but may raise the issue of improper venue on appeal from a final judgment on the merits. In so holding, the court, quoting from 2 Champ Lyons, AlabamaRules of Civil Procedure Annotated § 82.4 (2d ed. 1986), explained that although the "`denial of a motion for change of venue is not reviewable on an appeal from a final judgment[,] [a]n erroneous transfer of venue, a different concept, should be available on appeal from the final judgment.'" Ragona,540 So.2d at 724.
We conclude that the venue issue is properly before us and that the father is correct that the Coffee Circuit Court erred by transferring this proceeding to the Montgomery Circuit Court. The judgment of the Montgomery Circuit Court is therefore vacated, and the cause is remanded to that court with instructions that it transfer the case to the Coffee Circuit Court for further proceedings.
The mother's motion to strike and seal a portion of the father's brief is denied.
JUDGMENT VACATED AND CAUSE REMANDED.
PITTMAN and BRYAN, JJ., concur.
MURDOCK, J., concurs in part and concurs in the result, with writing.
THOMPSON, J., concurs in the result, without writing.