BRYAN, Judge.
 

 Caroline Scarborough (Griswold) (“the mother”) appeals from a judgment of the Houston Circuit Court that modified custody of the parties’ child (“the child”) from the mother to Joseph B. Scarborough (“the father”).
 

 I.
 
 Procedural History
 

 The record indicates that the child, who was born in August 2004, was the only child born during the parties’ marriage. The record further indicates that the parties were divorced in March 2005 and that, pursuant to that judgment, the parties were awarded joint legal custody of the child and the mother was awarded physical custody of the child, subject to the father’s award of visitation. On March 8, 2006, the father filed a petition to modify his visitation rights with the child. In his petition, the father alleged that there had been a material change in circumstances since the entry of the divorce judgment and that the mother, among other things, had denied his visitation with the child. The mother responded and denied the material allegations in the father’s petition to modify visitation.
 

 On June 21, 2006, the mother filed a notice in the trial court of her intent to change the principal residence of the child on August 5, 2006. On July 6, 2006, the father filed a motion for pendente lite relief or, in the alternative, a motion for an expedited hearing. In his motion, the father stated his objection to the mother’s intent to change the principal residence of the child and he alleged that the mother had not complied with the Alabama Parent-Child Relationship Protection Act, § 30-3-160 et seq., Ala.Code 1975 (“the Act”). The father requested pendente lite custody of the child or, in the alternative, an order from the trial court that would prohibit the mother from moving the child to Lawrenceville, Georgia, before a hearing could be conducted. The case-action summary indicates that, also on July 6, 2006, the father filed an amended petition requesting primary physical custody of the child. The record contains a handwritten notation in the case-action summary, signed by the trial-court judge assigned to the case at that time, that states: “Temporary legal custody granted to the father. Child shall reside with mother so long as mother remains in Alabama. Visitation remains as ordered originally.”
 

 On July 19, 2006, the mother filed a motion requesting that the order granting the father temporary legal custody of the child be set aside because she did not receive notice of the father’s motion for pendente lite relief before the trial court entered its order. The mother also requested that the trial court enter a temporary order that permitted her to change the principal residence of the child.
 

 The record indicates that a hearing was conducted on August 2, 2006, and on August 4, 2006, the trial court entered an order that stated: “Upon hearing evidence, the court finds that the parties have joint custody of the ... child ... as previously ordered. The mother is given permission to take the ... child temporarily to Georgia. The father’s petition for custody is to remain open, pending coopera
 
 *932
 
 tion of the mother for visitation.”
 
 [1]
 

 On March 22, 2007, the trial court conducted an ore tenus hearing that was a continuation of the hearing conducted on August 2, 2006. At the conclusion on the March 22, 2007, hearing, the trial-court judge stated, on the record, that he was going to award the parties joint custody of the child, with alternating, physical custody on a three-month basis, and that the parties would “just have to try it that way.” On April 2, 2007, the trial court entered an order (“the April 2007 custody order”) that awarded “joint care and custody” of the child to the parties. The trial court further awarded physical custody of the child to the father until July 1, 2007, subject to the visitation rights of the mother. The order then awarded physical custody of the child to the mother from July 1, 2007, until October 1, 2007, subject to the visitation rights of the father. The trial court then set “[a] hearing to review custody” on October 3, 2007.
 

 On August 2, 2007, the father filed a motion for immediate pendente lite custody or, in the alternative, a motion for an expedited hearing. In his motion, the father alleged that the child had been exposed to domestic violence between the mother and her new husband. The mother objected, and the trial court set a hearing on August 15, 2007. The trial judge entered a handwritten notation in the case-action summary on August 15, 2007, that stated: “This court’s [April] 2007 [custody order] shall remain in full force and effect, provided that [the] mother’s husband ... shall not be in the presence of the ... child.” The case was set for a final hearing on October 3, 2007. There is no indication in the record that a hearing ever took place on October 3, 2007.
 

 On September 16, 2008, the mother filed a motion to set a hearing for review. The mother alleged that her “visitation” period would end on October 4, 2008, and that a move back to the father’s home would be disruptive for the child who was, at that time, enrolled in a half-day pre-kindergar-ten program in Georgia. The allegations in the mother’s motion indicated that the parties were still exchanging physical custody of the child every three months. The mother requested the trial court to allow her to have “continued primary physical custody” of the child. After a request for a continuance, the case was set for a final hearing on June 22, 2009.
 

 Before, the start of the June 2009 hearing, a discussion was held on the record between the parties’ attorneys and the trial-court judge regarding what issues were before the court.
 
 [2]
 
 The parties agreed that visitation and custody of the child needed to be determined because the joint-physical-custody arrangement that the parties had been exercising since April 2007 could not continue in light of the fact that the child was nearing school age. The father’s attorney stated that the trial court was going to have to determine what arrangement was in the best interest of the child. The mother’s attorney agreed with that assessment of the case, and the trial court proceeded to hear ore tenus testimony.
 

 On July 7, 2009, the trial court entered a judgment (“the July 2009 judgment”) that awarded the father “care, custody, and control” of the child, subject to specified visitation rights of the mother, and ordered the mother to pay the father child support in the amount of $312 a month. On August 4, 2009, the mother filed a
 
 *933
 
 postjudgment motion pursuant to Rule 59, Ala. R. Civ. P. In her postjudgment motion, the mother argued, among other things not pertinent to this appeal, that the trial court had allowed her to move to Georgia and “share visitation without such being conditional or reflective on it being a material change [in circumstances].” However, she also stated that “[t]he previous order only reflects that the parties would have joint care and custody for a period of [three] months each with the party [that] was the non-custodial party at the time having visitation.”
 

 On September 4, 2009, the trial court entered an order amending the July 2009 judgment and stating that the evidence had demonstrated a material change in circumstances since the entry of the divorce judgment and that the custody-modification standard set forth in
 
 Ex parte McLendon,
 
 455 So.2d 863 (Ala.1984), had been met. The trial court also specifically stated that it had found the testimony of Linda Varner, one of the child’s counselors, extremely persuasive and that “a custody/visitation arrangement whereby the mother has primary custody would actually work to preclude the father from having a meaningful relationship with [the child].” The trial court denied all other issues raised by the mother in her postjudgment motion, and the mother timely appealed.
 

 II.
 
 Issues
 

 On appeal, the mother presents three issues for review by this court: (1) whether the trial court exceeded its discretion in awarding the father custody of the child, (2) whether the trial court erred by applying the
 
 McLendon
 
 standard in this case, and (3) whether the trial court erred by failing to comply with certain provisions of the Act.
 

 III.
 
 Facts
 

 At the time of the June 2009 hearing, the child was almost five years old. The mother had moved to Lawrenceville in August 2006, after the entry of the August 4, 2006, order, and she testified that she had remarried three days after she had moved to Lawrenceville. The mother stated that it was approximately 250 miles from her home in Lawrenceville to the father’s home in Dothan. The mother stated that she lived in a four-bedroom, two-bathroom home in a good neighborhood and that her mother and her sister lived approximately one mile away from her home. The mother was employed as a social worker for the Center of Neuroscience. At the time of the June 2009 hearing, the mother had obtained a divorce from the man she had married in August 2006, and she lived with the child, in three-month increments, and the child’s younger half brother (“the half brother”).
 
 [3]
 
 The mother stated that she had never tried to influence the child about where he was going to live.
 

 In January 2008, the mother took the child to Dr. Eric Fisher, a psychologist, for counseling to help the child transition between living in her home and then living in the father’s home. The mother stated that Dr. Fisher was very helpful “in the beginning” but that she stopped taking the child to see Dr. Fisher because he did not contact her. The mother then took the child to see Dr. David Ghostley in September 2008, approximately 10 days after the child last saw Dr. Fisher.
 

 Dr. Ghostley, a licensed clinical psychologist, testified that he had met with the child and the mother on three occasions between September 2008 and the June 2009 hearing. Dr. Ghostley stated that
 
 *934
 
 the child appeared to be anxious and that the mother had told him that the child became distressed around the times that he had to leave Lawrenceville to live with the father for three months. Dr. Ghostley stated that he did not see any reason that the child should not live in Georgia with the mother because the child had a lot of support in Georgia and because the mother was meeting all the needs of the child. According to Dr. Ghostley, the fact that the child had a strong bond with his half brother should be considered when making a determination regarding the best interests of the child.
 

 Dr. Ghostley testified that his role was evaluative rather than therapeutic, and he admitted that he had recommended that the child live with the mother after one 90-minute counseling session with the mother and the child. Dr. Ghostley admitted that he had never contacted the father or Linda Varner, the child’s therapist in Alabama. Dr. Ghostley had also never spoken with Dr. Fisher, the therapist that the mother had consulted before consulting Dr. Ghost-ley. Dr. Ghostley admitted that it caused him concern that Dr. Fisher had reported that the mother was not “up front” with the child, and he was also concerned that the child had made a statement to the effect that “Dr. Ghostley is going to help me stay with my momma forever.” Dr. Ghostley testified that the child had never said anything negative about the father, and he did not believe that the child was “at risk” with either the mother or the father.
 

 Linda Varner, a family therapist, testified that the father first brought the child to see her in December 2007. Since that time, Varner had seen the child approximately once a week during the father’s three-month custodial periods. Varner stated that the child was counseled independently but that the father had been included in some sessions. Varner stated that she would have liked to include the mother in a counseling session with the child, but she was unable to get in contact with the mother. Varner stated that the child had been counseled by Dr. Fisher while the mother was exercising custody of the child and that she and Dr. Fisher had been in communication with one another since she started seeing the child. Dr. Fisher had given her a report that corresponded with what she had observed in therapy with the child, and she believed that she and Dr. Fisher “were on the same page.” Varner stated that she was of the opinion that the best interests of the child would be served if he were placed in the custody of the father. Varner stated that she would not have given an opinion regarding the best interest of the child after one meeting with the child and the father.
 

 Varner stated that the child had high levels of anxiety and would often cry when he would convey things that had been said to him about his custody. Varner stated that she had no knowledge of the father’s telling the child things related to his custody. Varner admitted that she had worked with the child’s paternal grandmother approximately three years before the final hearing, but, she stated, she had never met the father until he brought the child to see her, and, she said, the fact that she knew the paternal grandmother had nothing to do with her testimony.
 

 The father testified that he had contacted the mother several times about coming to a counseling session with Varner, but the mother had never attended a session with Varner. The father stated that he had attended three or four counseling sessions with Dr. Fisher in Atlanta, Georgia, and that the mother and the child had been present for those sessions. The father stated the counseling sessions with Dr. Fisher had been helpful and that, be
 
 *935
 
 cause of the counseling sessions with Dr. Fisher, there was a period when the custody exchanges had been easier for the parties and the child.
 

 The father stated that he had traveled to Georgia to visit the child during the mother’s custodial periods but that he had had a difficult time seeing the child outside his normal visitation times. The father stated that, based on the past experience of the parties, if the mother was awarded primary physical custody of the child he did not believe that he would see the child on a regular basis. The father testified that visitation goes more smoothly when the custody proceedings are “hanging over” the mother’s head.
 

 The father stated that the mother’s former husband, the father of the half brother, was from the Dothan area and that, when the mother’s former husband had visitation with the child’s half brother, the father made an effort to allow the child to spend time with his half brother. The father remarried in March 2008, and he and his wife had a daughter who was nine months old at the time of the June 2009 hearing. According to the father, the child had a close relationship with his half sister. The father stated that he lived in a three-bedroom, two-bathroom home and that both of his children had their own bedroom. The father’s wife worked part time, and the father worked from 9:00 a.m. to 4:80 p.m. on Monday through Thursday, and from 9:00 a.m. to 12:00 p.m. on Fridays. He stated that his hours were flexible because he owned the business that he worked for, a medical-equipment company, and he earned approximately $35,000 a year.
 

 Both parties testified regarding difficulty cooperating with one another when it came to exercising visitation, although the mother also stated that she thought the parties had cooperated. The record indicated that both parties had, at times, refused to allow the other party visitation in addition to what was required by court order. The father stated that he did not think that the mother was a good mother to the child, and he stated that his opinion was based on things that the child had told him about events that had been “traumatic” for the child.
 

 IV.
 
 Discussion
 

 On appeal, the mother first argues that the trial court exceeded its discretion by modifying custody of the child in favor of the father. The mother argues that the Act applied to the June 2009 judgment and that she met her burden of rebutting the presumption found in § 80-3-169.4, Ala. Code 1975, that changing the principal residence of the child is not in the best interests of the child. She argues that the father failed to present evidence indicating that the best interests of the child would not be served by changing the principal residence of the child. The mother further argues that the evidence submitted by the father did not justify denying the mother the right to relocate with the child. Finally, the mother argues that the trial court failed to address the factors set forth in § 30-3-169.3(a), Ala.Code 1975.
 

 In response to the mother’s argument, the father argues that the Act no longer applied in this case because the trial court had allowed the mother to move to Georgia with the child, albeit “temporarily,” in August 2006,
 
 [4]
 
 but then modified custody of
 
 *936
 
 the child in the April 2007 custody order by awarding the parties joint legal and physical custody of the child. The parties had been exercising this joint-physical-custody arrangement for more than two years before the June 2009 hearing, which was conducted after the mother petitioned the court to schedule a “review hearing” in light of the fact that the child would be starting to attend school. The transcript from the June 2009 hearing indicates that both the mother’s attorney and the father’s attorney believed that neither party had the burden of proving the custody-modification standard set forth in
 
 Ex parte McLendon, supra,
 
 and that the best-interest-of-the-child standard applied to the pending custody issues.
 

 The April 2007 custody order appears to have addressed the petitions pending before the trial court at that time, specifically, the father’s petition for custody modification and his objection to the relocation of the principal residence of the child.
 
 [5]
 
 However, the April 2007 custody order also indicates that it is temporary in nature because the order scheduled a review hearing for October 8, 2007, although there is no indication in the record that the scheduled review hearing took place.
 

 If the April 2007 custody order was a pendente lite order, then the Act applied to the father’s still-pending request for custody modification and his objection to the mother’s request to change the principal residence of the child. However, if the April 2007 custody order was a “temporary” custody order, then the April 2007 custody order was a final, appealable judgment that modified custody of the child. Thus, we must determine the nature of the April 2007 custody order because the questions regarding whether the Act applied to the June 2009 judgment, and what custody-modification standard applied, depend on whether the April 2007 custody order was a temporary custody order, i.e., a custody judgment, or a pendente lite order.
 
 See Sims v. Sims,
 
 515 So.2d 1, 2 (Ala.Civ.App.1987) (discussing the distinguishing factors between pendente lite orders and temporary custody orders and stating that “temporary custody orders are distinguishable from pendente lite orders because temporary orders constitute final orders from which an appeal will lie to this court, whereas pendente lite orders are not ap-pealable”).
 

 In
 
 Hodge v. Steinwinder,
 
 919 So.2d 1179 (Ala.Civ.App.2005), this court, discussing
 
 Rich v. Rich,
 
 887 So.2d 289 (Ala.Civ.App.2004) (Murdock, J., with one Judge concurring and one Judge concurring in the result), stated:
 

 “[In
 
 Rich,
 
 ] this court explained the distinction between a pendente lite custody award and a custody award that, for lack of a better term, might be called a ‘trial’ or ‘experimental’ custody arrangement, made by the trial court in an attempt to ‘make it possible to base any subsequent change in custody on the history of the parties’ relationships that
 
 *937
 
 developed during th[e] [trial] period.’ 887 So.2d at 300.
 

 “In
 
 Rich,
 
 the trial court had entered a series of what it termed ‘temporary’ custody orders in an attempt to determine which of the two parents ... would be the more fit custodian. This court was called upon to determine whether any of the so-called ‘temporary’ custody orders was a final judgment — rather than a mere pendente lite order — for purposes of applying the
 
 Ex parte McLendon,
 
 455 So.2d 863 (Ala.1984), presumption to a custody-modification request.
 

 “Relying on the opinion of our supreme court in
 
 Ex parte J.P.,
 
 641 So.2d 276 (Ala.1994), this court in
 
 Rich
 
 first explained that all custody orders are ‘temporary’ in the sense that they are modifiable under appropriate circumstances. Thus, we said, the use of the term ‘temporary custody
 
 [5]
 
 is not helpful in deciding whether a particular custody order constitutes a final judgment. Instead, this court pointed out that the pertinent inquiry is whether a custody award is a pendente lite order — which is effective only during the pendency of the litigation and is usually replaced by the entry of a final judgment at the end of the litigation — or whether a custody award is a ‘custody order’ — which is final (and therefore appealable) until one of the parties succeeds in a request to modify the order.
 

 “ ‘The phrase “pendente lite” is Latin for “while the action is pending.”
 
 Black’s Law Dictionary
 
 1154 (7th ed. 1999). The manner in which pendente lite child-custody orders are treated allows trial courts, in making their final determinations of custody, to take into consideration developments that occur
 
 pending the
 
 litigation— that is, developments in the lives of the parties and the child that naturally occur during the unavoidable gap in time between the filing of an action and the time when the parties are ready for, and the court can schedule, a final hearing in the normal course of our judicial process.’
 

 “Rich v. Rich,
 
 887 So.2d at 301 n. 3. This court concluded that the circuit court’s ‘temporary
 
 [5]
 
 custody orders in
 
 Rich
 
 were not pendente lite orders because they did not merely allow the circuit court to consider ‘developments in the lives of the parties and the child that naturally oceur[red] during the unavoidable gap in time between the filing of [the] action and the ... final hearing’ in the case. We explained that considering the circuit court’s ‘temporary custody
 
 [5]
 
 orders as pendente lite determinations would be
 

 “ ‘[s]anctioning ... [a] distortion] [of] the [judicial] process by allowing a trial court to postpone the scheduling of a final hearing
 
 pending future developments
 
 in the lives of the parties.’
 

 “Rich v. Rich,
 
 887 So.2d at 301 n. 3. We stated:
 

 “ ‘In the present case, the successive “temporary custody” awards ... were not made with the “pendency of the [existing] litigation” in mind.
 
 Ex parte J.P.,
 
 641 So.2d [276] at 278 [ (Ala.1994) ]. Instead, each one of those judgments was a custody award made by the trial court in such a manner
 
 as to allow more facts to be developed
 
 — i.e.,
 
 to allow a trial period with the custodial parent and to make it possible to base any subsequent change in custody on the history of the parties’ relationships that developed during that period.’
 
 '
 

 “Rich v. Rich,
 
 887 So.2d at 300 (emphasis added). Finally, this court held:
 

 “ ‘It is clear that the custody awards at issue in the present case were not
 
 *938
 
 made by the trial court pending the litigation of the
 
 existing case,
 
 but instead were made in anticipation of a “new case,” i.e., newly developed facts, potentially being presented to the trial court at some future date. That is, they were custody awards intended to remain in place until such time, well into the future, as the trial court would “review” the case to determine whether there should be a modification of custody based upon changed circumstances that might have come into existence since the last custody award. Such awards are not penden-te lite awards; rather, they are “temporary custody” awards of the nature addressed in
 
 Ex parte J.P.,
 
 [641 So.2d 276 (Ala.1994),]
 
 Sims [v. Sims,
 
 515 So.2d 1 (Ala.Civ.App.1987) ], and Davis
 
 [v. Moody,
 
 459 So.2d 914 (Ala.Civ.App.1984) ].’
 

 “Rich v. Rich,
 
 887 So.2d at 301 (footnote omitted).”
 

 919 So.2d at 1182-83.
 

 In
 
 Hodge,
 
 this court determined that the temporary custody orders at issue were “
 
 ‘final
 
 declaration^] of who shall have custody of the children] until such time as there are future developments extrinsic to the litigation ...
 
 and
 
 a future request for relief is presented to the trial court.’ ” 919 So.2d at 1184 (quoting
 
 Trevino v. Blinn,
 
 897 So.2d 358, 364 (Ala.Civ.App.2004) (Murdock, J., dissenting)).
 

 Applying the law set forth in
 
 Hodge,
 
 we must conclude that the April 2007 custody order was a final, appealable custody judgment. The record on appeal indicates that the trial-court judge announced his intention to allow the parties to “try” a joint-physical-custody arrangement in March 2007 and entered an order to that effect in April 2007. The record also indicates that the April 2007 custody order was entered, not pending the litigation of the case, as it existed in March 2007, but “ ‘in anticipation of a “new case,” i.e., newly developed facts, potentially being presented to the trial court at some future date.’ ”
 
 Hodge,
 
 919 So.2d at 1183 (quoting
 
 Rich v. Rich,
 
 887 So.2d at 301). There is also an indication that the April 2007 custody order was a custody judgment made “ ‘in such a manner as to allow more facts to be developed — i.e., to allow a trial period [of joint physical custody] and to make it possible to base any subsequent change in custody on the history of the parties’ relationships that developed during that period.’ ”
 
 Id.
 
 (quoting
 
 Rich v. Rich,
 
 887 So.2d at 300) (emphasis omitted). Because the April 2007 custody order was a final judgment modifying custody of the child so that the parties had joint legal and physical custody, the custody-modification standard that applied to the mother’s request for a review of the April 2007 custody order was the best-interest-of-the-child standard.
 
 See Ex parte Couch,
 
 521 So.2d 987 (Ala.1988);
 
 Richardson v. Fotheringham,
 
 950 So.2d 339, 342 (Ala.Civ.App.2006) (quoting
 
 Nave v. Nave,
 
 942 So.2d 372, 376 (Ala.Civ.App.2005)) (“ ‘Because the parties had joint custody, this case is governed by
 
 Ex parte Couch,
 
 521 So.2d 987 (Ala.1988), which held that the best-interest standard applies to the modification of an existing joint-custody arrangement.’ ”).
 

 In her reply brief, the mother argues that the April 2007 custody order could not have been a final judgment because the April 2007 custody order contained a “date certain review of custody” on October 3, 2007. However, we note that in
 
 Rich v. Rich, supra,
 
 we held that a temporary-custody order was a final judgment despite the fact that the trial court in that case had included a date for a review hearing in the temporary-custody order. 887 So.2d at 301 n. 2 (“The fact that the trial court set in advance a subsequent hearing date
 
 *939
 
 to review future developments in the lives of the parties is not enough to change our view [that the judgments were temporary custody orders].”).
 

 Accordingly, because the April 2007 custody order was a final custody judgment, and because neither the mother nor the father appealed from that judgment, we must conclude that the Act no longer applied to the custody determination that was decided after the mother’s request to review the April 2007 custody order. We note that the mother did not argue that the Act applied when she and the father discussed, before the start of the June 2009 hearing, what custody-modification standard the trial court should apply, and the mother did not argue that the trial court had violated any provision of the Act in her postjudgment motion. In fact, the parties, after noting that they had shared physical custody of the child, agreed that the trial court was required to determine the child’s custody based on the best-interest-of-the-child standard.
 

 To the extent that the mother argues on appeal that the father failed to present evidence indicating that the child’s best interests would be served by awarding the father custody of the child, we disagree. Pursuant to
 
 Ex parte Couch, supra,
 
 the father was required to prove that a material change in circumstances had occurred since the entry of the April 2007 custody order and that the best interest of the child would be served by placing custody of the child with the father. We note that the parties agreed that a material change in circumstances had occurred since the entry of the April 2007 custody order because the child was nearing the age when he would be required to attend school, and the parties agreed that the joint-physical-custody arrangement that they had been exercising would not be in the child’s best interest once he began attending school. Both the mother and the father presented ore tenus evidence that would have supported a finding that the best interests of the child would be served by being in their sole custody. Thus, it was the duty of the trial court to weigh the evidence presented by the parties and to make a custody determination based on its view of the evidence.
 
 See Ex parte Bryowsky,
 
 676 So.2d 1322, 1324 (Ala.1996) (noting that trial courts are in the best position to make a custody determination and that appellate courts do not sit in judgment of disputed ore tenus evidence). This court is not permitted to reweigh evidence presented ore tenus, and we must affirm a custody determination that is supported by the evidence.
 
 McCartney v. McCartney,
 
 11 So.3d 213, 220 (Ala.Civ.App.2007). Accordingly, because the father presented evidence that would support a determination that the best interests of the child would be served by awarding the father custody of the child, we affirm the custody-modification determination in the July 2009 judgment.
 
 [6]
 

 Next, the mother argues that the trial court erred in applying the
 
 McLen-don
 
 standard in this case and in applying that standard only after she filed a post-
 
 *940
 
 judgment motion. The only authority cited by.the mother on appeal in support of her argument stands for the proposition that a custodial parent who intends to relocate with a child does not have the added burden of meeting the
 
 McLendon
 
 standard in addition to complying with the terms of the Act.
 
 See Daugherty v. Daugherty,
 
 993 So.2d 8, 14 (Ala.Civ.App.2008). Thus, the mother indicates in her argument that the trial court erred by implicitly concluding that the mother was required to meet the
 
 McLendon
 
 standard. Nothing in the record indicates that the trial court required the mother to meet the custody-modification standard set forth in
 
 Ex parte McLendon, supra.
 
 Although the trial court stated in its amended judgment that the
 
 McLendon
 
 standard had been met, that statement indicates that the father, the party who was awarded custody, had met the custody-modification standard set forth in
 
 Ex parte McLendon.
 
 Although we have concluded that application of the
 
 McLendon
 
 standard was improper in this case, the trial court’s error in doing so was harmless.
 
 See I.M. v. J.P.F.,
 
 668 So.2d 843, 845 (Ala.Civ.App.1995) (“We note that the trial court applied the
 
 McLendon
 
 standard here rather than the 'best interest’ standard, but because the
 
 McLendon
 
 standard is more stringent, the trial court’s error in that regard is harmless.”).
 

 Finally, the mother argues that the trial court erred by failing to comply with § 30-3-169.3(b), Ala.Code 1975, a provision of the Act, which states:
 

 “The court making a determination [regarding whether an actual or proposed change of principal residence of a child should cause a change in custody] shall enter an order granting the objection to the change or proposed change of principal residence of a child, denying the objection to the change or proposed change of principal residence of a child, or any other appropriate relief based upon the facts of the case.”
 

 The mother’s argument indicates that she faults the trial court for its failure to specifically grant or deny the father’s objection to the proposed change of principal residence of the child; we note that the mother has not addressed the last clause of § 30-3-169.3(b), which permits the trial court to make “any other appropriate relief based upon the facts of the case.” The mother’s argument fails on appeal for several reasons. First, the mother has not preserved this issue for review on appeal. It is well settled that an appellate court will not review an argument made for the first time on appeal.
 
 Andrews v. Merritt Oil Co.,
 
 612 So.2d 409, 410 (Ala.1992) (“[An appellate court] cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.”). The mother did not mention the Act in her postjudgment motion, nor did she allege error related to the trial court’s failure to specifically grant or deny the father’s objection to the proposed change of principal residence of the child. Furthermore, the mother has not cited any authority to support an argument that the trial court was required to make a specific finding granting or denying the father’s objection to a proposed change of principal residence of the child in a case such as this.
 
 See
 
 Rule 28(a)(10), Ala. R.App. P.; and
 
 State Farm Mut. Auto. Ins. Co. v. Motley,
 
 909 So.2d 806, 822 (Ala.2005) (citing
 
 Ex parte Showers,
 
 812 So.2d 277, 281 (Ala.2001)) (“[I]t is well settled that a failure to comply with the requirements of Rule 28(a)(10) requiring citation of authority in support of the arguments presented provides [an appellate court] with a basis for disregarding those arguments.”). Finally, because we have concluded that the Act did not apply to the mother’s request
 
 *941
 
 for a review of the April 2007 custody order, we must also conclude that the trial court, in its June 2009 judgment, was not compelled to comply with § 30-3-169.3(b).
 

 Based on the foregoing, we conclude that the mother has failed to demonstrate that the trial court committed reversible error. Accordingly, the judgment of the trial court is due to be affirmed. The mother’s request for an award of her attorney’s fees on appeal is denied.
 

 AFFIRMED.
 

 THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
 

 MOORE, J., concurs in the result, without writing.
 

 [1]
 

 . The record on appeal does not contain a transcript of the August 2, 2006, hearing.
 

 [2]
 

 . We note that a new trial-court judge had been assigned to this case on November 13, 2008.
 

 [3]
 

 . The mother had obtained a divorce from the father of the half brother on the grounds of cruelty and incompatibility. The mother admitted that there was a custody proceeding between her and the father of the half brother pending at the time of the June 2009 hearing.
 

 [4]
 

 . We note that the August 2006 order appears to be a "temporary order,” as contemplated in § 30-3-169.2(b), Ala.Code 1975, which states:
 

 "The court may grant a temporary order permitting the change of principal residence of a child and providing for a revised schedule for temporary visitation with a child pending a final hearing if the court
 
 *936
 
 finds that the required notice of a proposed change of principal residence of a child as provided in this article was provided in a timely manner, contained sufficient and accurate information, and if the court finds from an examination of the evidence presented at a hearing for temporary relief that there is a likelihood that on final hearing the court will approve the change of the principal residence of the child.”
 

 [5]
 

 . We acknowledge the fact that the April 2007 custody order does not
 
 specifically
 
 grant or deny the father’s objection to the mother’s request to change the principal place of residence of the child.
 
 But see
 
 § 30-3-169.3(b), Ala.Code 1975 (which permits a trial court to grant or deny a request to change the principal residence of a child
 
 or
 
 to make "any other appropriate relief based upon the facts of the case”).
 

 [6]
 

 . In her brief on appeal, the mother argues, without citation to any supporting authority, that the trial court erred by awarding the father legal and physical custody of the child because the father only requested physical custody of the child. We decline to address this argument presented by the mother because she has failed to adhere to the requirements of Rule 28(a)(10), Ala. R.App. P.
 
 See also State Farm Mut. Auto. Ins. Co. v. Motley,
 
 909 So.2d 806, 822 (Ala.2005) (citing
 
 Ex parte Showers,
 
 812 So.2d 277, 281 (Ala.2001)) ("[I]t is well settled that a failure to comply with the requirements of Rule 28(a)(10) requiring citation of authority in support of the arguments presented provides [an appellate court] with a basis for disregarding those arguments.”).