While this case primarily involves post-divorce modification proceedings, Mr. Abel shall still be referred to as the husband and Mrs. Hadder as the wife. No brief has been filed in this court on behalf of the wife.
The June 1, 1979 divorce judgment approved an agreement of the parties whereby, as to presently pertinent provisions, the wife received all of the household furniture, furnishings and fixtures (furniture), and she was awarded the custody of the two minor children of the parties, who were then two and four years of age. The husband agreed to pay certain debts, including a balance of approximately $5,000 due to Central Bank.
On October 4, 1979, the parties filed a joint petition, and pursuant thereto, the trial court modified the June divorce judgment by changing custody of the two daughters to the husband and by giving the furniture to him. That modification was by agreement of the parties, and this joint petition to modify stated that there had been a material change in the circumstances since the trial court rendered the divorce judgment in that the wife "is no longer desirous of retaining custody and control of the parties' minor children. . . ."
The wife filed two separate proceedings against the husband on June 24, 1980. The first sought to place the husband in contempt for failure to make payments on the Central Bank indebtedness, the wife alleging therein that she had paid twelve of such installments. The second petition requested the court to modify the October 4, 1979 judgment, her averments being that the judgment and the October joint petition to modify upon which the judgment was posed, arose out of the wife's then depressed financial condition, that there has been a material change in the circumstances in that she is now gainfully employed, earns a good income, has remarried, enjoys a stable home with her husband and that it is to the children's best interest that she be granted their custody. She further prayed that ownership of the furniture be re-invested in her.
A trial was had before the circuit court, but no report of the evidence was made. Pursuant to the provisions of A.R.A.P. rule 10 (d), the husband, after he perfected his appeal, prepared a statement of the evidence and served a copy of it upon the wife's attorney. No objections or amendments were ever made to the husband's statement of the evidence, and, upon its being submitted to the trial court, it was approved by that court, and it is included in the record on appeal. Since the approved statement of the evidence was relatively brief, we copy herein all of its statements pertaining to all evidence as to the issues raised on appeal:
 "At trial appellee was the first witness to testify. On direct examination she testified that she had initially agreed to enter the Joint Petition to Modify and to forfeit custody of the children due to financial problems. She testified that she was more fit to have custody because she *Page 66 
was the mother. Further, she testified that she could not physically have any more children and, therefore, she wanted her children back. She also testified on direct examination that she had made 12 payments on the note to Central Bank discussed in the Rule Nisi, the collateral for which is a 1979 Thunderbird automobile.
 "Appellee testified that the difficult financial situation which existed at the time she signed the Joint Petition to Modify was caused by the fact that she was unemployed. She further testified that she now lives in a two bedroom trailer with her present husband and that the two of them have a combined income of $1,800.00 per month.
 "On cross-examination appellee admitted that she had actually quit her job at the time of the Joint Petition to Modify, stating that the reason therefor was that appellant had aggravated her at work. Further, appellee also admitted that the attorney who had prepared the Joint Petition to Modify was originally retained by her and she considered him her attorney. She further admitted that at the timed [sic] she signed the papers, her mother and her brothers were present and she was not forced to sign the papers at all. Further, she stated that at the time of her unemployment she was only unemployed for a week or two. At that time she and her present husband, who were married at that time, quit their employment voluntarily in order to seek employment in Florida and that they returned within a week and found jobs in Jefferson County. Further, on cross-examination, appellee admitted that appellant was a good father, took good care of the children, and had never refused her visitation rights. She also admitted to adulterous behavior on her part in that she came back and lived with the appellant for a while after she had married her present husband. In fact, appellee married her present husband 9 days after the divorce decree was entered between the parties.
 "In regard to the note at Central Bank, appellee admitted on cross-examination that she had only made four payments on the Thunderbird rather than the 12 payments she testified to on direct examination. She admitted her brother, Michael Hagood, had bought the car from appellant before the parties were divorced. She also stated that this was agreed upon by both parties. Then she stated that in April of 1980, she and her brother had traded vehicles without appellant's permission. She traded the 1975 GMC pickup truck which she had been awarded under the divorce decree for the 1979 Thunderbird automobile which had not been awarded to either party under the divorce decree. As stated before, her brother had purchased that automobile from appellant before the divorce.
. . . .
 "The second witness to testify was Michael Hagood, appellee's brother. Hagood testified that he had purchased the Thunderbird from appellant in April or May of 1979. He testified that he agreed to pay the note to Central Bank thereon, but he and appellant agreed the debt would be left in appellant's name. Hagood testified that he had made 12 payments on the note and that only 13 had been due since he had gained possession from appellant.
 "The third and last witness to testify was Larry Abel, appellant. He testified that he was the father of the children of the marriage and that he was a fit and proper person to have custody of the children, that he has remarried and he and the minor children live with appellant's new wife and her two minor children. He testified that they all live in a three bedroom home and the combined income of the parties is $2,600.00 per month. He testified that he never aggravated appellee on her job and did not in any way force her to sign the Joint Petition to Modify. Also, he testified that he had sold some of the items of furniture which he had been awarded under the Joint Petition to Modify. *Page 67 
 "In regard to the debt to Central Bank, appellant stated that he had not given Hagood and appellee permission to trade vehicles. He stated that Hagood and appellee had called him to ask permission to trade the vehicle prior to their doing so and appellant responded that before he would agree to such a transaction, Hagood and appellee would have to gain title to the automobile and assume the outstanding debt owed on it."
By its final judgment as subsequently amended, the trial court (1) changed custody of the two children from the husband to the wife, and (2) ordered the husband to return the furniture to the wife. (3) The court further determined that the Thunderbird automobile was property which had been acquired during the marriage of the parties, but that it had not been disposed of nor awarded in prior judgments. The trial court ordered the husband to pay the balance of the debt on that vehicle to Central Bank as previously ordered by the original divorce judgment, that he repay the wife for payments which she paid on that car's indebtedness and that, when the debt was fully paid by the husband, he was granted the right to its possession by paying to the wife one-half of its then value. Other matters were adjudicated by that judgment which are not relevant to issues raised on this appeal. As to the items numbered (1), (2) and (3) above, the husband contends that the trial court erred. We agree.
Where no record is made of the evidence taken at a trial and the trial court approves a statement of the evidence pursuant to A.R.A.P. rule 10 (d), we must accept that statement of the evidence as being true. Mobley v. Turner, 346 So.2d 427 (Ala. 1977). Where the evidence is heard by the trial court, it is presumed that the trial court's findings of fact are correct, and we can only reverse a trial court's judgment when it is palpably wrong, is not supported by the evidence, or is manifestly unjust. Cotton States Mutual Insurance Co. v.Conner, 387 So.2d 125 (Ala. 1980); 2A Ala. Digest, Appeal Error Key 1010 (2). Here, the statement of the evidence does not lend support to those three aspects of the judgment which are attacked on appeal.
 (1)
The parent seeking to modify child custody must prove that a material change of circumstances has occurred since the rendition of the last child custody judgment. Barber v. Lay,384 So.2d 1095 (Ala.Civ.App. 1980), cert. denied,384 So.2d 1096 (Ala. 1980).
The October 1979 judgment was entered upon the joint petition of the parties. The statement of the evidence discloses that no fraud was practiced upon the wife in those proceedings. The change in circumstances stated in the joint petition of October 1979 that she no longer desired custody is at variance with her present allegations that that judgment resulted from her then poor financial condition. The wife's present modification petition was based upon alleged changed circumstances consisting of her employment, remarriage and a stable home. However, it appears that she had actually remarried nine days after the original divorce judgment. She had been married to her present husband for almost four months when the October 1979 judgment was rendered. Furthermore, in October 1979 she had voluntarily quit her job and was temporarily unemployed for only a week or two.
Remarriage and improved financial conditions are circumstances to be considered in change of custody actions, but those factors are not controlling in themselves, even if they are considered to be present in this case. Porter v.Templeton, 368 So.2d 35 (Ala.Civ.App. 1979). The fact that a mother has reformed and has married a fine man, who is able to care for her and her children, does not warrant the modification of a custody judgment. Carter v. Harbin, 279 Ala. 237, 184 So.2d 145 (1966); Lansdell v. Shoddy, 269 Ala. 344,113 So.2d 151 (1959); Pezent v. Nelson, 52 Ala. App. 9,288 So.2d 792 (1974). Her testimony that she felt that she was the most fit parent to have custody since she is their mother cannot be the foundation for a change in custody, *Page 68 
for the tender years presumption that the mother is the preferred custodial parent of young children has been abolished. Devine v. Devine, 398 So.2d 686 (Ala. 1981). She did not fault the husband as a father but, to the contrary, admitted that he was a good father and took good care of the children.
The facts as contained in the statement of the evidence inadequately justified any change of custody of the children from the father to the mother.
 (2) "A court cannot modify a property settlement, except to correct clerical errors, after a lapse of thirty days from the rendition and entry of a final judgment approving such settlement. A divorce judgment [here the October 4, 1979 modification judgment] dividing property between the parties is not subject to being modified as to such property division on account of changed conditions. . . . (Citations omitted.)"
Culverhouse v. Culverhouse, 389 So.2d 937, 938 (Ala.Civ.App. 1980). In view of that provision of law and because of the total absence of any evidence in the record concerning the furniture, the court exceeded its authority in requiring the husband to return the furniture to the wife.
 (3)
By the wife's own admission at the trial, the Thunderbird automobile had been disposed of through its sale to the wife's brother (Hagood) prior to the divorce. She had consented to that sale. In April of 1980, the wife and Hagood decided to trade vehicles. Prior to doing so, they contacted the husband, who refused to approve the transaction unless the note to Central Bank, as well as the title to the vehicle, were taken out of his name. Nevertheless, the wife exchanged with her brother her pickup truck for the Thunderbird. In effect, they traded not only vehicles but apparently also the debts against the vehicles, and the wife became the owner of the Thunderbird as well as assuming liability to the Central Bank for the balance due upon that debt upon that car. She had previously been ordered to be responsible for the debt against the truck.
At the time of the divorce, Hagood was the equitable owner of the Thunderbird, subject to the debt against it with Central Bank, which Hagood had agreed with the husband to assume and pay. As between Hagood and the husband, Hagood was primarily responsible for that debt. If Hagood did not pay it, as between the husband and the wife, the husband would then have to make the payments. In substance, the husband was holding the wife harmless from any liability on the car note if her brother defaulted in his payments. When the wife traded vehicles and debts, she replaced Hagood in the pecking order on that totem pole, and she then became responsible for the debt as between the husband and the wife. Just because she traded for the Thunderbird is no just reason to now require the husband to make the car payments which her seller, Hagood, had agreed with the husband to assume and pay.
Accordingly, the trial court could not require the husband to reimburse the wife for any such car payments which she might have made. Neither could it require him to pay her installments upon the car as they fall due in the future.
As to the three aspects of the judgment previously discussed, we reverse and remand this case to the learned trial court where a judgment shall be rendered which is consistent with this opinion.
The foregoing opinion was prepared by Retired Circuit Judge EDWARD N. SCRUGGS while serving on active duty status as a judge of this court under the provisions of § 12-18-10 (e) of the Code (1975) and this opinion is hereby adopted as that of the court.
REVERSED AND REMANDED.
All the Judges concur. *Page 69