MOORE, Chief Justice
(dissenting).
I respectfully dissent from this Court’s denial of J.C. and R.C.’s petition for a writ of certiorari. The Montgomery Juvenile Court awarded custody of S.C. (“the *280 child”) to J.C. (“the father”) and R.C. (“the stepmother”). K.U. (“the maternal grandmother”) appealed from the judgment. The Court of Civil Appeals reversed the judgment of the juvenile court and ordered that custody of the child remain with the maternal grandmother. K.U. v. J.C., 196 So.3d 265 (Ala.Civ.App.2015). This petition followed.
The Court of Civil Appeals provided the following procedural history:
“On January 29, 2008, the juvenile court entered a consent judgment (‘the 2008 Montgomery judgment’) awarding the maternal grandmother and T.W. (‘the paternal grandmother’) joint legal and physical custody of the child, whose date of birth is December 19, 2005. On July 1, 2008, the Autauga Juvenile Court entered á judgment (‘the 2008 Autauga judgment’) in a dependency case awarding the maternal grandmother and the paternal grandmother joint legal and physical custody of F.C., the child’s sister, whose date of birth is November 22, 2004. On February 15, 2013, the father and the stepmother filed, in the. juvenile court, a petition to modify the custody of the child and F.C. On March 28, 2013, the maternal grandmother filed an answer to the petition. Subsequently, the juvenile court transferred the petition to modify the. physical custody of F.C. to the Autauga Juvenile Court. In April 2014, the father consented to a judgment being entered by the Autauga Juvenile Court pursuant to which the custody of F.C. whs awarded to the maternal grandmother, and the father’s custody-modification petition as to F.C. was dismissed. After a trial, the juvenile court entered a judgment awarding custody of the child to the father and the stepmother.”
196 So.3d at 268 (footnotes omitted). The evidence indicates that, at the time the 2008 judgment was entered by the Montgomery Juvenile Court, the father and the birth mother were in the midst of'a divorce. The maternal and paternal grandmothers agreed with the father and the mother that it was in the best interests of the child to. temporarily have custody assigned to the grandmothers until either the mother or the father was able to properly take care of the child. Pursuant to this agreement and consistent with' the 2008 judgment, the child moved in with the maternal grandmother. Eventually the father found a stable job, remarried, and had a son named A.C., but the maternal grandmother never agreed to relinquish custody of the child. The father has continued to maintain his visitation schedule with the child, has sustained a paternal relationship with her, arid has been involved in her daily. life. Additionally, the stepmother and the child have bonded, and the paternal grandmother testified that the stepmother has acted as a surrogate mother because the birth mother is not very involved in the child’s life.
The evidence also shows that the maternal grandmother and the father and stepmother all have taken, good care of the child and have provided á loving and caring environment. Although the child and her sister, F.C., are very close and have always lived together, the child has also enjoyed being a big sister to A.C.
The petitioners’ verified statement of facts included the following alleged excerpts from the juvenile court’s November 5, 2014, order:
“i. The ‘Court had the opportunity to observe all of the parties involved, all of the witnesses, and to examine any and all of the exhibits that were entered into evidence.’
“ii. The ‘Court, has taken ample time to review the entire record as a whole in *281 this matter and has heavily weighed the various factors involving all of the same.’
“iii. This ‘Court is well aware of the [Ex parte] McLendon [, 455 So.2d 863 (Ala.1984),] standard with regard to modifications of custody. This Court is of the considered opinion that the overwhelming evidence and testimony in this matter indicate that the Father and Step-Mother (J.C. and R.C.) of this child are the proper persons to have the legal and physical custody, care, and control of child, (S.C.).’
“iv. This ‘Court is of the opinion that in all cases involving custody of a child, the welfare and best interests of the child are of the highest and most paramount importance. The Court, finds fi'om the overwhelming testimony and evidence presented that the Father and Step-Mother are the fit and proper persons to be granted custody of the child. This Court retains the notion in .this matter that the child’s welfare is the pinnacle of this litigation, and the child being with the Father and Step-Mother would serve this notion_’
“v. ‘... [T]he testimony now suggests that the child would be best served by. being in the care, custody, and control of her natural Father and her StepMother.’
“vi. ‘The Court- heard .extensively from both of the [joint legal and joint physical custodians]. [T]he undisputed testimony from each Grandmother and from the Father suggests that the agreement for the child to be in the custody of the Grandmothers was to be temporary; and that the Father initially, and now with his Wife of several years, has attempted to regain primary care of the child since shortly after entering into the temporary agreement. While it appears that [the paternal grandmother] has been supportive and encouraging of the same, it also appears to the Court that [the maternal grandmother, K.U.,] has impeded the process of parent-child reunification at all costs .. The Court is not convinced that [K.U.] produced any evidence outweighing the evidence produced by [J.C. and R.C.] regarding permanent placement of the child; nor does the Court believe that [K.U.] continues to place. the best interest of- the child over her own interests. The evidence produced by [J.C. and R.C. and the paternal grandmother] has convinced the Court that it would be beneficial to the child to be placed in [J.C. and R.C.’s] home and the Court is convinced that any possible or slight disruption to the minor child would be outweighed by the substantial benefit that the child will gain from these changes.’ (Emphasis added.).
“vii. ‘This Court has determined what" is in the best interest and wélfare of this minor child, to include consideration of the McClendon, [sic] standard, and has reduced the decision to this writing. The Court made this determination from the weight of the: evidence before it and in the conscience of the Court. After the Court had an opportunity to spend a significant'- amount of time hearing this matter, observing the partied, and contemplating'this matter and the record, along with the Guardian ad Litem’s report, the Court is of the considered opinion that the child in question in this matter shall be'reunified with, the Father, and shall be in his home. This 'Court will reunify this family.’ (Emphasis added.)
“viii. ‘... [T]he evidence is more than sufficient to support this Court’s conclusion that the child’s manifest best interest and welfare will be best served in the custody of [J.C. and R.C.].’ ”
*282 The Court of Civil Appeals reversed the judgment of the juvenile court, permitting the maternal grandmother to retain custody of the child and. holding that the juvenile court improperly applied the standard enunciated in Ex parte McLendon, 455 So.2d 863 (Ala.1984).
I believe that the writ should issue to consider whether the Court of Civil Appeals improperly reweighed the evidence. The ore tenus rule in child-custody cases is well established:
“When evidence in a child custody case has been presented ore tenus to the trial court, that court’s findings of fact based on that evidence are presumed to be correct. The trial court is in the best position to make a custody determination — it hears the evidence and observes the witnesses. Appellate courts do not sit in judgment of disputed evidence that was presented ore tenus before the trial court in a custody hearing. See Ex parte Perkins, 646 So.2d 46, 47 (Ala.1994), wherein this Court, quoting Phillips v. Phillips, 622 So.2d 410, 412 (Ala.Civ.App.1993), set out the well-established rule:
“ ‘ “Our standard of review is very limited in cases where the evidence is presented ore tenus. A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, Payne v. Payne, 550 So.2d 440 (Ala.Civ.App.1989), and Vail v. Vail, 532 So.2d 639 (Ala.Civ.App.1988), and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong, or unless an abuse of the trial court’s discretion is shown. To substitute our judgment for that of the trial court would be to reweigh the evidence. This Alabama law does not allow. Gamble v. Gamble, 562 So.2d 1343 (Ala.Civ.App.1990); Flowers v. Flowers, 479 So.2d 1257 (Ala.Civ.App.1985).’”
“It is also well established that in the absence of specific findings of fact, appellate courts will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous. See the cases collected at 3 Ala. Digest 2d Appeal & Error § 846(5) (1993).
[[Image here]]
“Neither the Court of Civil Appeals nor this Court is allowed to reweigh the evidence in this case. This case, like all disputed custody cases, turns on the trial court’s perception of the evidence. The trial court is in the better position to evaluate the credibility of the witnesses ... and the trial court is in the better position to consider all of the evidence, as well as the many inferences that may be drawn from that evidence, and to decide the issue of custody.”'
Ex parte Bryowsky, 676 So.2d 1322, 1324-26 (Ala.1996) (emphasis added). In reversing the juvenile court’s judgment, the Court of Civil Appeals relied on McLendon. In McLendon, a divorce judgment had incorporated the agreement of divorcing parents and had awarded custody of a minor child to the paternal grandparents. Sometime after the divorce, the mother remarried and was able to provide a stable environment and financial support for the minor child. Eventually, the mother, who apparently had had infrequent visits with the minor child while the child was living with the paternal grandparents, picked up the minor for visitation and took the minor to California without the grandparents’ knowledge. After the grandparents obtained a court order in California, the minor child was returned to the grandparents in Alabama, where the custody matter at issue in the case ensued. In McLen *283 don, we reversed the Court of Civil Appeals’ affirmance of the juvenile court’s decision and held that the child would remain in the custody of the grandparents, stating:
“It is not enough that the parent show that she has remarried, reformed her lifestyle, and improved her financial position. Carter v. Harbin, 279 Ala. 237, 184 So.2d 145 (1966); Abel v. Hadder, 404 So.2d 64 (Ala.Civ.App.1981). The parent seeking the custody change must show not only that she is fit, but also that the change of custody ‘materially promotes’ the child’s best interest and welfare.
[[Image here]]
“We have examined the record carefully and conclude that the parties are equally capable of taking care of the child, and that both would provide her with a nurturing, loving home. The most that the mother has shown is that her circumstances have improved, and she is now able to provide for the child in the same manner in which the grandparents have been providing for her. She failed to show that changing the custody materially promotes the welfare and best interest of the child.”
455 So.2d at 866.
The undisputed facts before us indicate not only that the father has stabilized his life and remarried and that both the maternal grandmother, on the one hand, and the father and stepmother, on the other, would provide caring, stable homes for the child, but also that a change in custody would “materially promote” the child’s best interest and welfare. Those facts include, but are not limited to, the following: 1) The father has an established pa* ternal relationship with the child; 2) the child has developed'a strong relationship with the stepmother, who has acted as a surrogate mother to the child because of the general lack of involvement of the child’s birth mother in the child’s life; 3) the child has enjoyed being a big sister to her half brother; and 4) the father and stepmother appear .to offer the child a more active and involved home life. Moreover, there appear to be other facts, in addition to the four mentioned above, that would further distinguish this case from McLendon: 1) While both a grandfather and a grandmother were present to raise the child in McLendon, in the present case there is only one grandpareht — the maternal grandmother — who is functioning in a single-parent role; 2) the mother in MbLendon had infrequent periods of visitation with the child, but the father in this case has consistently followed his visitation schedule; and'3) the mother in McLendon essentially kidnapped the 'child from the grandparents, biit no similar fact is present here.
For the Court of Civil Appeals to reweigh the evidence and to assume it knows better than the trial judge, who heard and observed the witnesses in this case, violates the ore tenus rule and is contrary to our established precedent. In this case, the welfare of a minor child is at stake, and, according to the juvenile court and the guardian ad litem appointed by the court to protect the minor child, the best interest of the minor child will not be served by leaving the child with the maternal grandmother. I would not disturb the juvenile court’s ruling.