Brandi Schulman SMITH

v.

Robert Brenton SMITH.

2150014.

Court of Civil Appeals of Alabama.

April 22, 2016.

Charles N. Reese of Reese & Reese Attorneys, Daleville, for appellant.

Billy J. Sheffield II, Dothan, for appellee.

MOORE, Judge.

Brandi Schulman Smith ("the mother") appeals from a judgment entered by the Houston Circuit Court ("the trial court") modifying the custody of the parties' children, C.W.S. and C.L.S.

## Procedural History

The parties have previously been before this court. *Smith v. Smith* (No. 2140076, May 1, 2015), —— So.3d —— (Ala.Civ.App. 2015) (table). In *Smith*, we affirmed, without an opinion, a judgment that had been entered by the trial court on August 8, 2014; that judgment had denied the petition of Robert Brenton Smith ("the father") to modify a provision of a divorce judgment entered on December 18, 2008, which had awarded the mother "primary" physical custody of the parties' children.[1] On October 30, 2014, the mother filed a petition for a rule nisi and for a modification of child support. On January 14, 2015, the father filed a response to the petition and also petitioned for a modification of custody. After a trial, the trial court entered a judgment on May 7, 2015, awarding the parties joint legal custody of the children, awarding the father "primary" physical custody, and awarding the mother specified visitation with the children during school breaks.[2] On June 6, 2015, the mother filed a postjudgment motion. On August 26, 2015, the trial court amended the judgment to award the mother additional monthly visitation. On August 26, 2015, the father filed a postjudgment motion. On October 5, 2015, the mother filed her notice of appeal. The mother's notice of appeal was held in abeyance pending the denial, by operation of law, of the father's postjudgment motion on November 24, 2015. *See* Rule 59.1, Ala. R. Civ. P., and Rule 4(a)(5), Ala. R.App. P.

## Facts

Harrison Farr, the director of the Houston County Court Referral Program, a program designed "to help people that have alcohol and drug cases that come to the Houston County court," testified that the mother had been referred to the court-referral program as a result of a 2007 case in which she had been charged with possession of a controlled substance and in which she had been sentenced to probation. He stated that the mother had failed to report to the program monthly as she was required to do. He testified that, on January 9, 2015, he filed a report requesting that the mother's probation be revoked for her failure to report to the program and that the mother had subsequently been arrested and placed in jail.

Wendy Mathis, a Houston County Department of Human Resources ("DHR") caseworker, testified that, on January 21, 2015, the mother had been released from jail and had tested positive for benzodiazepines on a drug screen. Mathis testified that, as a result of the positive drug screen, DHR had become involved with the family and had required the mother to submit to a safety plan. Mathis testified that the mother had told her that her mother had given her the prescription drug that had resulted in the positive drug screen. Mathis also testified that the mother's urine sample had been extremely diluted. Mathis testified that a DHR worker had inspected the mother's parents' house, in which the mother and the children resided, and that there had been no problems with the house. She testified that she had not observed any negative effects as a result of the children's living arrangements, that the children had been

---

1. We interpret the divorce judgment as having awarded the mother sole physical custody. *See Ex parte Stouffer,* [Ms. 2140981, March 25, 2016] —— So.3d ——, —— (Ala.Civ.App. 2016). The term "primary" physical custody is an incorrect term and is not recognized in Alabama law.

2. We interpret the judgment as awarding the father sole physical custody and awarding the mother visitation. *See* note 1, supra.

healthy and appropriately dressed, and that the mother had been compliant with the safety plan.

The mother testified that the January 2015 incident was the only time she had taken a drug that had not been prescribed to her. She testified that, at the time of trial, she was attending counseling once a week to learn new ways to cope with stress. The mother also testified that, at her house, C.L.S. has weekly, sometimes daily, meltdowns. She testified that C.L.S. has no meltdowns when he is at school because it is structured. C.W.S. also testified that C.L.S. has frequent meltdowns when he is at the mother's house but that he does not have meltdowns at the father's house. C.W.S. testified that she wants to keep living with her mother.

The father testified that he was concerned because the children had been missing too much school, because the children have poor dental hygiene, and because the mother's boyfriend, W.K.S., who has a revoked driver's license and eight convictions for driving under the influence of alcohol, had been driving the children. The father testified that, when he had had temporary custody during the pendency of the previous modification action, the children were not sick all the time and had done well in school. The father testified that the mother had recently taken C.L.S. to the doctor and that the doctor had prescribed medication relating to his autism diagnosis. The father testified that he had not observed anything indicating that C.L.S. needed medication. The father testified further that, when he had previously taken the children to the dentist, the dentist had noted that both children had poor dental hygiene. The mother testified that she had taken the children to the dentist every six months since the previous judgment was entered. She testified that, on their most recent visit to the dentist,

C.W.S. had had three cavities and C.L.S. had had eight cavities. She testified that she requires the children to brush their teeth every morning and every night. C.W.S. testified that she brushes her teeth every night when she is at the mother's house but that the father requires her to brush her teeth more than she normally does when she is with the mother.

Laura Hatcher, the parental-involvement specialist for the children's school, testified that, during the 2014–2015 school year, C.W.S. had had 20 absences, 5 of which had been unexcused, and that C.W.S. had been tardy 8 times, 3 of which had been unexcused. She testified that C.L.S. had had 20 absences, 3 of which had been unexcused. She testified that the mother had been required to complete the school's truancy program, which the mother had completed on March 5, 2015. She testified the children's maternal grandmother had brought the children to school on most days.

Anita Owens, C.L.S.'s teacher, testified that he was doing well academically and socially; she testified that his behavior is average and that she had not witnessed him having any meltdowns. Jolie Harper, C.W.S.'s teacher, testified that, since January 2015, C.W.S.'s school attendance had improved. She testified that C.W.S. had had no behavioral problems and that C.W.S. was succeeding in school and would be promoted to the next grade with her classmates.

W.K.S. admitted that he has had eight convictions for driving under the influence of alcohol, that he is an alcoholic, that he still drinks occasionally in front of the children, and that he drives with a revoked driver's license. The mother testified that W.K.S. had not been arrested or convicted for driving under the influence of alcohol since 2008. Both the father and C.W.S.

testified that W.K.S. has driven with the children in his vehicle.

### Standard of Review

"When evidence in a child custody case has been presented *ore tenus* to the trial court, that court's findings of fact based on that evidence are presumed to be correct. The trial court is in the best position to make a custody determination—it hears the evidence and observes the witnesses. Appellate courts do not sit in judgment of disputed evidence that was presented *ore tenus* before the trial court in a custody hearing."

*Ex parte Bryowsky,* 676 So.2d 1322, 1324 (Ala.1996).

### Discussion

When a court has awarded sole physical custody of children to one parent in a final judgment, that judgment may be modified to transfer custody of the children to the other parent based on the standard established in *Ex parte McLendon,* 455 So.2d 863 (Ala.1984):

"The correct standard in this case is:

" 'Where a parent has transferred to another [whether it be a non-parent or the other parent], the custody of h[er] infant child by fair agreement, which has been acted upon by such other person to the manifest interest and welfare of the child, the parent will not be permitted to reclaim the custody of the child, unless [s]he can show that a change of the custody will materially promote h[er] child's welfare.'

"*Greene v. Greene,* 249 Ala. 155, 157, 30 So.2d 444, 445 (1947), quoting the Supreme Court of Virginia, *Stringfellow v. Somerville,* 95 Va. 701, 29 S.E. 685, 687, 40 L.R.A. 623 (1898).

"Furthermore,

" '[This] is a rule of repose, allowing the child, whose welfare is paramount, the valuable benefit of stability and the right to put down into its environment those roots necessary for the child's healthy growth into adolescence and adulthood. The doctrine requires that the party seeking modification prove to the court's satisfaction that material changes affecting the child's welfare since the most recent decree demonstrate that custody should be disturbed to promote the child's best interests. The positive good brought about by the modification must more than offset the inherently disruptive effect caused by uprooting the child. Frequent disruptions are to be condemned.'

"*Wood v. Wood,* 333 So.2d 826, 828 (Ala. Civ.App.1976).

"It is not enough that the parent show that she has remarried, reformed her lifestyle, and improved her financial position. *Carter v. Harbin,* 279 Ala. 237, 184 So.2d 145 (1966); *Abel v. Hadder,* 404 So.2d 64 (Ala.Civ.App.1981). The parent seeking the custody change must show not only that she is fit, but also that the change of custody 'materially promotes' the child's best interest and welfare."

455 So.2d at 865–66.

In the present case, the evidence indicated that the mother had failed to comply with the terms of her probation, which had resulted in her being arrested and spending a short period in jail. Upon her release from jail, the mother failed a drug screen, at which time it was discovered that the mother had taken her mother's prescription medication, resulting in DHR's enacting a safety plan for the mother and the children. Furthermore, the mother had failed to ensure that the children had adequate school attendance,

resulting in the mother's having to complete the truancy program at the children's school. The mother had also allowed the children to ride in a vehicle that was being driven by W.K.S., who had had eight convictions for driving under the influence of alcohol and was driving with a revoked driver's license. The evidence also indicated that the children have poor dental hygiene and that the children had had multiple cavities at their most recent dental checkup. Finally, the evidence indicated that C.L.S. experiences frequent meltdowns that had been isolated to the mother's house and that those meltdowns had resulted in his having to be prescribed medication. On the other hand, the evidence indicated that, when the children had been in the father's care, he had required the children to brush their teeth more often, that the children had done well in school, and that C.L.S. had not had any meltdowns.

Based on the foregoing, and considering our standard of review, we conclude the trial court could have properly determined that there had been material changes in circumstances affecting the welfare of the children, that the positive good brought about by a modification of the children's custody would more than offset the inherently disruptive effect caused by uprooting the children, and that the change in custody would materially promote the best interests of the children. *Ex parte McLendon*, 455 So.2d at 865–66. Therefore, we affirm the trial court's judgment.

AFFIRMED.

THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ., concur.